UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK



-------------------------------------------
Genrikh Vapne
       Plaintiff          **Complaint for Violation of Civil Rights**
individually and on behalf of
all others similarly situated
       v.          Case N_____ **2838** ☐ **ORIGINAL**
Sonny Perdue
Ben Carson
Thomas Price          Jury Trial    No
Nancy Berryhill
Samuel Roberts          **DONNELLY, J.**
Howard Zucker
       Defendants
-------------------------------------------          **MANN. M.J.**

The Parties in This Complaint
**A. The Plaintiff**
Genrikh Vapne          in text Plaintiff
99 Vandalia Ave., Apt.10G,
Brooklyn, NY 11239
ph.718-649-5610
email: genrikhjv@gmail.com

**B. The Defendants**
Defendant N 1
Sonny Perdue          in text USDA
US Department of Agriculture (USDA) Secretary
1400 Independence Ave. S.W., Washington, DC 20250
ph. 202-720-3631
Defendant N 2
Ben Carson          in text HUD
US Department of Housing and Urban Development (HUD) Secretary
451 7th Street S.W., Washington, DC 20410
ph. 202-708-1112


Defendant N 3
Thomas E.Price          in text HHS
US Department of Health and Human Services (HHS) Secretary
200 Independence Ave. S.W. Washington, DC 20201
ph.202-690-7000

<u>Defendant N 4</u>
Nancy Berryhill                                              in text SSA
Social Security Administration (SSA) Acted Commissioner
Altmeyer Building, suite 900
6401 Security Boulevard, Baltimore, MD 21235
ph. 410-965-3120
<u>Defendant N 5</u>
Samuel Roberts                                              in text OTDA
Office of Temporary and Disability Assistance (OTDA) Commissioner
40 North Pearl Street, Albany, New York 12243
ph. 518-473-1090
<u>Defendant N 6</u>
Howard Zucker                                              in text DOH
NYS Department of Health Commissioner
Corning Tower Empire State Plaza , Albany, New York 12237
ph.518-474-2011

**Plaintiff's declaration:**

<u>**The main goal of Plaintiff is to stop use COLA as an income in Defendants' wrong**</u>
<u>**doing policies related to civil rights of poor benefit recipients  by reducing of food**</u>
<u>**stamps, increasing of rent, increasing of Medicare premiums and deductions and**</u>
<u>**decreasing of admission to Medicaid benefits.**</u>

**Therefore Plaintiff by addressing to District Court intents:**
**1.  to compel USDA, HUD, HHS, SSA, OTDA, DOH to recognize that COLA IS NOT INCOME.**
**2. to compel USDA to stop reducing of SNAP budget considering COLA as income.**
**3. to compel USDA to open all details of its SNAP policy for reducing SNAP budget.**
**4. to compel USDA to control OTDA wrong doing policy in SNAP.**
**5. to compel HUD to stop increasing of rent considering COLA as income.**
**6. to compel HHS to stop using COLA in FPL determination, Medicaid Eligibility limits and Medicare A and B premium and deduction calculation.**
**7. to compel HHS to open all details in  Medicaid Eligibility limits  and Medicare A and B premium and deduction calculation.**
**8. to compel SSA to recognize COLA IS NOT INCOME.**
**9. to compel DOH to stop using  COLA in Medicaid Eligibility limits and Medicare A and B premium and deduction calculation.**
**10. to compel DOH to open all details in Medicaid Eligibility limits  and Medicare A and B premium and deduction calculation.**
**11. to compel OTDA to pay COLA to NYS SSI recipients.**
**12. to compel OTDA to open mechanism of SUA determination.**
**13. to punish by punitive damages USDA, HUD, HHS, SSA, OTDA, DOH for their gross political negligence to their legal obligations and to legal civil rights of their poor benefit recipients.**

**Basis for Jurisdiction**

This case is brought against Federal (USDA, HUD, HHS, SSA) and State (OTDA, DOH) officials and involves the following federal questions as included in following federal laws and regulations:

1. Article VI of the US Constitution which dictates that federal law is the "supreme law of the land"(Supreme Clause and Doctrine of Preemption)

2. 18USC242 about deprivation of rights under color of law

3. 7USC Chapter 51 - SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM (SNAP)

4. 7USC2014(d)(12) about exclusion of COLA money in SNAP budget calculation.

5. 42 USC1437a - Rental payments

6. 42USC1437f – Low income housing assistance

7. 24CFR509(c) – mandatory income exclusion

8. 42USC9902(2) - Poverty Line

9. 42 USC301 – Social Security Act (related to COLA calculation and payment)

10. 7CFR273.12(e)(3) – notices of mass action


CLAIMS
(FACTS AND ARGUMENTS)


**1. SUBJECT OF COLA LAW 7USC2014(d)(12)**

This law is included in SNAP 7USC2014 **Eligible households** section (d) EXCLUSIONS

FROM INCOME Household income for purposes of the supplemental nutrition assistance program

shall include all income from whatever source excluding only—

"*(12) through September 30 of any fiscal year, any increase in income attributable*

*to a cost-of-living adjustment made on or after July 1 of such fiscal year under title*

*II or XVI of the Social Security Act [42 U.S.C. 401 et seq., 1381 et seq.], section*

*3(a)(1) of the Railroad Retirement Act of 1974 (45 U.S.C. 231b(a)(1)), or section*

*5312 of title 38, if the household was certified as eligible to participate in the*

*supplemental nutrition assistance program or received an allotment in the month immediately preceding the first month in which the adjustment was effective;"*

This law means that **COLA money** determined as acted from September 30 of any fiscal year, which begins as financial year from October 1, and determined from July 1 by SSA rules (42 U.S.C. 415 (i)(1)) of COLA determination based on amount of CPI-W calculated by Bureau of Labor Statistic in third quarter from July 1 till September 30 of year **should be excluded from income for calculation of SNAP allotment.**

This law was accepted by US Congress in 1982 year (PL 97-253) by initiative of two Congress members who understood obvious idea that COLA can't be considered as usual income and therefore it will be fair to exclude COLA from usual money income. (Exhibit 1)

## 2. COLA IS NOT INCOME

COLA is Cost-of-Living Adjustment which amount in %% is determined by SSA by comparing of Consumer Price Index (CPI) for current quarter from July 1 till September 30 with CPI for same quarter of previous year. CPI for Urban Wage Earners and Clerical Workers (CPI-W) is calculated by Department of Labor Bureau of Labor Statistic. As stated by SSA "the purpose of the COLA is to ensure that the purchasing power of SS and SSI income benefits **is not eroded by inflation**." As stated in balance.com "COLA helps retirees, who are on a fixed income, to maintain a viable standard of living in the face of inflation".

When COLA > 0, SSA increases the SS and SSI benefits on %% of COLA. So such COLA part of benefit is **money sum subjected to compensate the increased because of inflation amount of money spent by SS and SSI recipient in previous year market goods purchasing.**

**So COLA can't be considered as income in usual sense of this term**.

For example, 1) Merriam-Webster dictionary: "income – a gain or recurrent benefit usually measured in money that derives from capital or labor" ; 2) For English language learners: "income – money that is earned from work, investments, business, ets"; 3) Definition of income for students: "income – a gain usually in money that comes in from labor, business or property"; 4) legal dictionary: "income – return of money from one's business, labor, or capital invested, gains, profits, salary, wages, etc."

## 3. COLA IS INCOME ???

But in federal legislation for USDA, HUD, HHS, SSA COLA money  is considered mistakenly as real income (as determined in sec. 2 above) included in calculation of SNAP allotment, HUD rent for residents of subsidized buildings and HHS, DOH recipients of Medicaid and Medicare their Medicaid Eligibility Limits and Medicare A and B premium and deduction. **The 7USC2014(d)(12) as excluded income is not existed for employees and agents of USDA, HUD, HHS, DOH, OTDA. SSA being neitral in recognizing of COLA IS NOT INCOME factually support the legal violations of other Respondents.**

a) Income is determined by USDA in 7CFR273.9: " Household income shall mean all income from whatever source excluding only items specified in paragraph (c) in this section". **Paragraph (c) Income exclusions doesn't include COLA money**.

b) HUD by 42USC1437a in "(A)Mandatory exclusion from rent payment in determining adjusted income, PHA shall exclude  from the annual income of family the following amounts" **doesn't mentioned COLA money as in 7USC2014(d)(12). The COLA**

**money as excluded income doesn't mentioned also in 42USC1437a about rent calculation.**

c) Income is determined by SSA in 42USC1382a as sum which includes "(2) unearned income means all other income, including (A) support and maintenance furnished in cash or kind except (B) any payments received as pension, retirement or disability benefit, including veteran compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits." **So SSA is not excluded COLA money**

d) special definition of income in HHS, DOH (under HHS menagement) legislation was not found by Plaintiff. But in determination of FPL (Federal Poverty Level) HHS use COLA as a measure of FPL annual recalculation and submitted such data to DOH.

e) OTDA being under management of USDA FNS also includes COLA money as a real income in SNAP allotment calculation despite in NYSRR387.11 *Income exclusion* it is said about excluding of (h) reimbursements for past or future expenses to the extent they do not exceeded actual expenses, and do not represent a gain or benefit to the household. Reimbursement shall not be considered to exceed actual expenses, unless the provider or the household indicates the amount is in excess of actual expenses.

## 4. HOW USDA AND HUD EXCLUDED INCOME

In HUD main instrument for income exclusion there is a rule 24CFR5.609(c) where it is stated:

"Annual income does not include the following: specifically excluded by any other Federal statute from consideration as income for purposes of determining eligibility or

benefits under a category of assistance program that includes assistance under any program to which the exclusion set forth in 24CFR5.609(c) apply. A notice will be published in the Federal Register and distributed to PHAs and housing owners identifying the benefits that quality of this exclusion. Updates will be published and distributed when necessary."

More over HUD periodically published in Federal Register text of Federally Mandated Exclusions From Income-Updated Listing. Last time such listing was published in FR on 05/20/2914 by office of HUD Assistant Secretary for Public and Indian Housing. As stated the goal of publication is amounts specifically excluded by any Federal statute from consideration as income for purpose of determining eligibility or benefits in a HUD program. **But in such Mandatory Listings together with 24CFR5.609(c) the law 7USC2014(d)(12) is absent.**

In USDA such instrument of periodical mandatory income exclusion listings is absent. All income exclusions are determined by 7USC2014 and in 7CFR273.9(c)  **But USDA and OTDA together neglect existence of 7USC2014(d)(12).**

## 5. USDA FNS THEORY OF TWO COLAS

 In FNS official employees invented amazing theory of two COLAs – one SSA COLA and other SNAP COLA.

In email of 03/14/2017 FNS Program Analyst Robert Ek  write:

"Additionally, the SNAP and Social Security cost of living changes are different because they are governed by different law.  SNAP COLA changes are effective October 1 and the Social Security COLA changes are effective on January 1 apply to different programs and are governed by different law.  When a SNAP household receives an increase in their

household income due to a cost of living increase from a program administered by the Social Security Administration, its SNAP benefit amount **may (?)** decrease as the household has more income available to purchase food." (Exhibit 2)

## 6. USDA FNS AND OTDA GROSS NEGLIGENS TO SNAP OBLIGATIONS

a) In 7USC2020(g) it is stated:

"(g)STATE NONCOMPLIANCE; CORRECTION OF FAILURES

If the Secretary determines, upon information received by the Secretary, investigation initiated by the Secretary, or investigation that the Secretary shall initiate upon receiving sufficient information evidencing a pattern of lack of compliance by a State agency of a type specified in this subsection, that in the administration of the supplemental nutrition assistance program there is a failure by a State agency without good cause to comply with any of the provisions of this chapter, the regulations issued pursuant to this chapter, the State plan of operation submitted pursuant to subsection (d) of this section, the State plan for automated data processing submitted pursuant to subsection (o)(2) of this section, or the requirements established pursuant to *section 2032 of this title* the Secretary shall immediately inform such State agency of such failure and shall allow the State agency a specified period of time for the correction of such failure. If the State agency does not correct such failure within that specified period, the Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency and, upon suit by the Attorney General in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located and a showing that noncompliance has occurred, appropriate injunctive relief shall issue, and, whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold from the State such funds

9

authorized under sections *2025(a)*, *2025(c)*, and *2025(g)* of this title as the Secretary determines to be appropriate, subject to administrative and judicial review under *section 2023 of this title*."

In 7USC3121 Responsibility of Secretary and Department of Agriculture **there is no any word about USDA Secretary's responsibility to control SNAP.**

b) On 12/16/2016 USDA OIG office received Plaintiff's complaint N PS-2701-0231 against wrong actions of FNS Administrator A. Rowe (now she is replaced by J. Shahin). In the complaint there were following accusations:

*"1. Permanent changing on October 1 of every year maximum allotments, minimum standard deductions and approving state SUA amounts and structure which led **to permanent reducing of SNAP budgets for individual eligible households.***

*2. Abusing SSI SNAP beneficiaries right on fair play by ignoring of sec.7USC2014(d)(12) excluding COLA income in determination of SNAP budge allotment.*

*3. Avoiding her obligation as FHS administrator to control huge amount of violations in notice practice which has a place in NYS OTDA system. For example, individual SNAP beneficiaries usually don't receive notice about SNAP budget change on October 01 each year, they didn't receive in time the form LD-3151 (changing in live circumstances) and current notice form LD-3152 (SNAP allotment).*

*4. Ignoring important fact that in OTDA notices to SNAP beneficiaries never provided the worksheet of SNAP calculation."*

As it is became known from OIG email the investigation of the complaint is not finished so far.

c) Plaintiff's accusations of OTDA illegal mass actions submitted to attention of Kings County Supreme Court are in Exhibit 3.

## 7. USDA's SNAP ILLEGAL POLICY OF    REDUCING AMOUNT OF ALLOTMENT BECAUSE OF COLA

In its illegal policy of permanently reduce SNAP allotment because of COLA USDA FNS is managed by:

1. By theory of existence of two kinds of COLA – SNAP COLA and SSA COLA (see. sec.5 in this Complaint). SNAP COLA is instrument for allotment reducing.

2. By 7CFR273.12(e)(3) about mass changes in Federal benefits: "*The State agency shall establish procedures for making mass changes to reflect cost-of-living adjustments (COLAs) in benefits and any other mass changes under RSDI, SSI, and other programs such as veteran's assistance under title 38 of the United States Code and the Black Lung Program, where information on COLA's is readily available and is applicable to all or a majority of those programs' beneficiaries.*" State agency as OTDA interprets the direction "to establish procedures for making mass changes to reflect COLA" as order by legislator to reduce SNAP allotment.

3. Good example of FNS direction about mass updated SNAP allotment is in Exhibit 4.

4. Historical data prepared by FNS from 2004 till 2017 about Income Eligibility Standard, Maximum Allotments and Deductions can be evaluated in Exhibit 5. It is important that development of all data is based on changes in COLA.

5. In Exhibit 6 it can be seen the OTDA GIS 17 TA/DC001 about SSI COLA NYSNIP Standard Benefit Amount Adjustments.

*11*

6. Specifically for Plaintiff's family of 2 persons in household some important for SNAP allotment data are following:

a) Maximum allotments from 2008 till 2017 years are changed from $298 till $357. In 2012 year - $367.

b) Deductions are changed from 2008 till 2017 years from $134 till $155.

c) HCSUA data are changed from 2008 till 2017 from $577 till $758. In 2014 year - $785.

d) SNAP allotments (information from official OTDA reports form WINRO 153) are changed for period of 2008 till 2017 year from $163 till $203, while in 10/2010 $245, in 01/2012 $222, in 01/2014 $193, in 10/2015 $209, in 11/2016 $205. **For 2016 year from February till December OTDA wrongly really paid monthly allotment is $203 (information from EBT) while it should be paid from February till September $207 and from October till December $205 monthly.**

7. OTDA refuses to send to SNAP recipients their individual notices about decisions to change amount of SNAP allotment during of mass actions. As it is stated in 7CFR273.12(e)(3): "A State agency may require households to report the change on the appropriate monthly report or may handle the change using the mass change procedures in this section. If the State agency requires the household to report the information on the monthly report, the State agency shall handle such information in accordance with its normal procedures. Households that are not required to report the change on the monthly report, and households not subject to monthly reporting, shall not be responsible for reporting these changes. " **But direct direction of issue the individual SNAP allotment notice during mass action is absent despite of about such notices it is stated in 18NYCRR 358-3,3,**

*12*

**358-2.2, 387.20.** OTDA try to limit its job only by mass announcement as in Exhibit 6 and this limitation is supported by FMS.

8. Despite of Plaintiff's inquiries  USDA FMS refuses to explain 1) how Maximum allotment is calculated from TFP monthly table (Exhibit 7), 2) how deductions are calculated, 3) how OTDA SUA are approved.

## 8. HUD's RENT ILLEGAL POLICY OF INCREASING RENT BECAUSE OF COLA

As it mentioned in this Complaint sec.3(b) HUD refuses to recognize  COLA law 7USC2014(d)(12) as document deserves to be mentioned in 24CFR5.609(c) as income excluded in rent calculation.

Therefore for 21 years of living in HUD subsidized building Plaintiff 's household is obligated to pay permanently increased rent only because of COLA announced by SSA. For example, in 2008 year rent was $274, in 2010 year - $291, in 2011 year - $275, in 2012 year - $286, in 2013 year - $297, in 2015 year - $301, in 2016 year - $306, in 2017 year - $307. Example of rent document for 2017 is in Exhibit 8.

## 9. FPL and COLA

It is known that by law Federal Poverty Level (FPL)  is determined by US Bureau of the Census (BC). The amount of FPL (**threshold and guideline**)  is calculated by BC every year by taking in account **incomes** of different groups of US residents.

Cost of Living Adjustment (COLA) is determined by SSA based on Consumer Price Index (CPI) calculated by DOL Bureau of Labor Statistics (BSL) in account of customer market **expenses**. BSL calculated two kind of CPI – CPI-U and CPI-W.

13

In every year recalculation of FPL BC uses the CPI-U. In every year recalculation of

COLA SSA uses CPI-W.

HHS in every year recalculation of FPL acted as requested in 42USC9902(2):
"The term "poverty line" means the official poverty line defined by the Office of Management and Budget based on the most recent data available from the Bureau of the Census. The Secretary shall revise annually (or at any shorter interval the Secretary determines to be feasible and desirable) the poverty line, which shall be used as a criterion of eligibility in the community services block grant program established under this chapter. **The required revision shall be accomplished by multiplying the official poverty line by the percentage change in the Consumer Price Index for All Urban Consumers during the annual** or other interval immediately preceding the time at which the revision is made. Whenever a State determines that it serves the objectives of the block grant program established under this chapter, the State may revise the poverty line to not to exceed 125 percent of the official poverty line otherwise applicable under this paragraph." HHS use FPL guidelines.
**So, HHS factually in FPL calculation connects and enjoins income and expenses of benefit recipients.**

## 10. DOH MEDICAID, MEDICARE A and B together with COLA and FPL

It is possible by analysis of DOH General Information System (GIS) issues to get

statistics of Medicaid eligibility incomes and Medicare A and B premiums together with

COLA and FPL statistics:

| Medicaid Eligibility Limit for 1 person | Medicare A | Medicare B | | COLA | FPL |
|---|---|---|---|---|---|
| | | premium | | %% | |
| 2010 $708 | $248 | $450 | $110.50 | 0 | $ 10830 |
| 2011 $735 | $248 | $451 | $115.40 | 0 | $ 10890 |
| 2012 $735 | $241 | $451 | $ 99.90 | 3.6 | $ 11170 |
| 2013 $769 | $243 | $426 | $104.90 | 1.7 | $ 11490 |
| 2014 $825 | $224 | $407 | $104.90 | 1,5 | $ 11670 |
| 2015 $825 | $226 | $411 | $104.90 | 1.7 | $ 11770 |
| 2016 $825 | $226 | $411 | $121.80 | 0 | $ 11880 |
| 2017 $825 | $227 | $413 | $134 | 0.3 | $ 12060 |
| | | Growth 2014-2017 | | | |
| 0% | 1.3% | 1.5% | 27.7% | 3.5% | 3.3% |

Conclusion: **for last 4 years DOH reduced admission poor NYS residents to Medicaid and Medicare B.**

14

Except of premium in Medicare B benefit recipient should pay deductable, which in 2017 year is $183.

How NYS residents are qualified to Medicaid see Exhibit 9.

**Not only COLA should not be considered as Income, but FPL also should not be used as Lever to press American poor people.**

## 11. SECRETS

From analysis of USDA, HHS, DOH policies it is became clear that the appearance of many data important for benefit calculation are covered and secret. Such data are declared as documented directive by USDA, HHS, DOH, OTDA without providing a ground for such directives about data which practical determination is not shown.  An example of such directive from HHS CMS in Exhibit 10 .  USDA FNS acted chief J. Shahin, HHS FPL specialist S. Kaminsky, DOH Medicaid and Medicare specialist J. Arnold refused to response on Plaintiff's inquiries  (Exhibit 11).

One of kidding example of such directive is 18NYSRR360-4.7 with Medicaid Eligibility Limits of 1996 year ( Exhibit 12).

## 12. OTDA REFUSE TO PAY COLA

It is known that SSA pay COLA money to SSI recipients. From October, 2014 year OTDA reached agreement with SSA about separation the NYS part of SSI payment from general SSA payment COLA money to SSI recipients. That situation was reflected by OTDA in GIS 14 TA/DC040 issued on 09/30/2014 (Exhibit 13). Practically payment of SSI benefit to NYS recipients is acted by OTDA SSP office. SSP refuses to pay COLA based on NYS Social Service Law, Title 6 Additional State Payments for Eligible Aged,

*15*

Blind and Disabled persons (sec.209-212). Situation is more clear from Plaintiff's email to SSP director D. Staszak (Exhibit 14).

It is mean that for OTDA SSP the Article VI of the US Constitution which dictates that federal law is the "supreme law of the land"(Supreme Clause and Doctrine of Preemption) is not exists and not recognized by NYS executive and legislative authorities.

## 13. OTDA ABOUT SUA

SUA – Standard Utility Allowance. It play important role in calculation of SNAP allotment for household. SUA amount are determined by OTDA and approved by USDA FNS. Factually it should be considered one form of SUA – HCSUA  including household utility typical and mandated expenses on every utility together with phone expenses. While separate phone SUA exists.

For Plaintiff's household amount of HCSUA (information from official OTDA reports form WINRO 153) were changed from 2008 till 2017 from $577 till $758. In 2014 year - $785. **Plaintiff's addressing to FNS and OTDA for submitting information about principles, documentations of SUA calculation and approval were left without response**.

## 14. SSA COLA POSITION

Plaintiff trying to impel SSA to recognize that COLA IS NOT INCOME and to express such opinion to USDA and HUD in letter addressed to SSA acted Commissioner N.Berryhill (Exhibit 15).  In SSA detailed response (Exhibit 16) it is absent SSA's clearly expressed  position about COLA IS NOT INCOME. **By such neutrality SSA factually**

*16*

**support illegal SNAP and rent policies acted by USDA and HUD. Such supporting**

**places SSA on the same level of accusation as USDA and HUD.**

### 15. LETTERS TO USDA AND HUD SECRETARIES

On 04/01/2017 Plaintiff mailed a letter to USDA Secretary S.Perdue with offer to recognize at last the 7USC2014(d)(12) as excluded income in SNAP allotment calculation for preventing addressing to Court for such legal privilege for  SNAP recipients. (Exhibit 17). On 04/20/2017 USDA FNS rep emailed  the response (Exhibit 18) without any new ideas. All information in the email repeats the information in Exhibit 2.

On 04/01/2017 Plaintiff mailed a letter to HUD Secretary B. Carson with offer to recognize at last the 7USC2014(d)(12) as excluded income in rent calculation for preventing addressing to Court for such legal privilege for  residents in HUD subsidized buildings (Exhibit 19). On 04/24/2017 Plaintiff called to Carson's office by 202-708-0417 and offered to response till 05/01/2017. Response is absent.

### 16. ABUSE OF RIGHTS

For Plaintiff is obvious that by gross negligence to their obligations and violation of some existing laws  Defendants in their policies in SNAP allotment and HUD rent calculations provide to all beneficiaries Deprivation of Rights Under Color of Law as in 18USC242:

*"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit*

*17*

*aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."*

## RELIEFS

By this Complaint Plaintiff address to District Court Judge for following decisions:

1. Confirm that COLA IS NOT INCOME

2. Confirm that COLA as declared in 7USC2014(d)(12) should be excluded as "income" in USDA and OTDA practice of SNAP allotment calculation and in HUD practice of rent calculation.

3. Confirm that in NYSRR387.11  COLA money should be considered as

(h) reimbursement excluded money.

4. Direct to USDA, HHS, DOH to respond to Plaintiff's inquiries about SNAP, Medicaid, Medicare data producing closed to benefit recipients.

5. Direct to USDA, HHS, DOH to stop manipulation of produced data with obvious goal to reduce growth of  benefits in compare with growth of income to American poor people.

6. Return to benefit recipients all money of SNAP allotment and HUD rent received by USDA,OTDA, HUD illegal actions for 35 years from 1982 year by ignoring of 7USC2014(d)(12) (PL 93-253).

7. Modify NYS SSL Title 6, sec.208-212 to pay COLA to NYS SSI recipients with return of all underpaid COLA money from October, 2014 year.

8.  Modify 7CFR273.9(c) by including   7USC2014(d)(12) as excluded "income".

9. Modify 7USC3121 including USDA Secretary responsibility for SNAP control.

10. Modify 24CFR5.609(c) by including 7USC2014(d)(12) as excluded "income".

11. Modify 7CFR273.12(e)(3) by excluding from text mentions about COLA.

12. Modify 42USC1437a by including in text COLA money as excluded from rent calculation income.

13. Modify NYS Social Service Law, Title 6 Additional State Payments for Eligible Aged, Blind and Disabled persons (sec.209-212) to include in text of COLA payments.

14. Reject USDA FMS theory of two COLAs.

*18*

15. Accuse Defendants in gross negligence because of the greatest amount of wrongdoings and punish them in public interest of justice for obvious malicious, illegal and fraudful actions by penalty of $10000 each with transfer the penalties to USA Treasurer.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing _05/05/May_ 20 _17_.

Signature of Plaintiff_ G. Vapne _

Printed Name of Plaintiff_ G. Vapne _

*Exh. 1*

COMPUTATION OF PRIMARY INSURANCE AMOUNT
Sec. 215. [42 U.S.C. 415]  For the purposes of this title—
Cost-of-Living Increases in Benefits

(i)(1) For purposes of this subsection—

(A) the term "base quarter" means (i) the calendar quarter ending on September 30 in each year after 1982, or (ii) any other calendar quarter in which occurs the effective month of a general benefit increase under this title;

(B) the term "cost-of-living computation quarter" means a base quarter, as defined in subparagraph (A)(i), with respect to which the applicable increase percentage is greater than zero; except that there shall be no cost-of-living computation quarter in any calendar year if in the year prior to such year a law has been enacted providing a general benefit increase under this title or if in such prior year such a general benefit increase becomes effective;

(D) the term "CPI increase percentage", with respect to a base quarter or cost-of-living computation quarter in any calendar year, means the percentage (rounded to the nearest one-tenth of 1 percent) by which the Consumer Price Index for that quarter (as prepared by the Department of Labor) exceeds such index for the most recent prior calendar quarter which was a base quarter under subparagraph (A)(ii) or, if later, the most recent cost-of-living computation quarter under subparagraph (B);
(2)(A)(i) The Commissioner of Social Security shall determine each year beginning with 1975 (subject to the limitation in paragraph (1)(B)) whether the base quarter (as defined in paragraph (1)(A)(i)) in such year is a cost-of-living computation quarter.

*Exh. 2*

SNAPHQ-Web – FNS  Apt.14/2017

Dear Mr. Vapne:

Thank you for your April 9 and 11, 2017, emails regarding Supplemental Nutrition Assistance Program (SNAP) maximum benefit allotments, Cost of Living Adjustments (COLA) and Standard Utility Allowances (SUA).

Federal law requires that the Food and Nutrition Service (FNS) calculate the maximum amount of benefits a SNAP household can receive using the June Thrifty Food Plan (TFP).  Changing this would require action from Congress.  Since the TFP is based on a family of four, FNS uses that number to calculate the maximum allotments for all other household sizes.  FNS calculates the allotments based on economies of scale, which means that the per person meal cost lessens as households get larger.  In other words, smaller households get more benefits per person and larger households get slightly fewer benefits per person.

Once the calculations are made, FNS provides the updated information to State SNAP agencies in an annual COLA announcement which includes the updated maximum allotments, income eligibility standards, and deductions for the next Federal Fiscal Year. The most recent memo for FY 17 can be found here.  State SNAP agencies are then required to update their eligibility systems to reflect these changes, which become effective October 1 each year.  Annual allotments and eligibility standards can be found here.

FNS has a different process to approve the Standard Utility Allowances (SUA).  As you may be aware, Standard Utility Allowances SUAs are standardized utility expense figures used in place of actual utility costs to calculate a household's total shelter costs.  (High shelter costs can result in a deduction from a household's net income, which can mean a higher SNAP allotment.)  States calculate SUAs based on average utility costs in the State, or in local areas of the State.  SNAP rules require States to annually update their SUAs to reflect changes in actual utility costs.  The States submit these amounts to their respective FNS Regional Office for approval.

Additionally, the SNAP and Social Security cost of living changes are different because they are governed by different law.  SNAP COLA changes are effective October 1 and the Social Security COLA changes are effective on January 1 apply to different programs and are governed by different law.  When a SNAP household receives an increase in their household income due to a cost of living increase from a program administered by the Social Security Administration, its SNAP benefit amount may decrease as the household has more income available to purchase food.

Under SNAP rules, State agencies are not required to notify SNAP households of certain changes that affect a large portion of the caseload, such as cost of living adjustments.  If you have a question about changes to your benefits, we strongly encourage you to contact your State directly.  The State will have information specific to your case and may be able to help you understand how your benefits were calculated.  Thank you for contacting the Food and Nutrition Service.

Sincerely,  **Robert Ek**  Program Analyst   Certification Policy Branch Program Development Division SNAP.

*Exh.3*

My Petition is result of my experience with NYS state SNAP system for 25 years, from 1992. I am sure this experience describes facts of gross ignorance by SNAP managers of all legal rights which should be submitted to all SNAP recipients in NYS.
Specifically submitted in Petition documents reflect following facts of such ignorance:
1. Absence in Notices of SNAP budget decisions the detailed calculation of amount of food stamp.
2. As shown by statistics the important indicator of SNAP budget SUA was changed differently from $577 in 2008 year till $758 by unknown to customers reasons.
3. Permanent mistakes in Notices of SNAP budget determinations.
4. Data in Notices of SNAP budget  determination are not appropriate to data in EBT card.
5. Refuse to submit Notices of SNAP budget determination in form LDSS-3152 instead of old form XL0218.
6. General policy tendency to reduce amount of SNAP budget to recipients.
7. Refuse to execute Fair Hearing decisions.
8. Ignorance in FH decisions of appellant's requests.
9.  Refuse to react on FH requests of nonmaterial character.
10. Refuse to return underpaid food stamps.
11. Illegal reducing of SNAP budget when COLA>0.
12. Refuse from 2014 year to pay COLA to SSI recipients.
13. Refuse to submit individual SNAP budget decisions in October when of mass updating, in January when of mass receiving of COLA, in February when rent change is happened because of HUD rules.
14. Refuse to respond on customers' letters.
15. Whole ignorance of SNAP federal and state laws and regulations.
All of mentioned above characteristics are reflected in Petition and in exhibits to it.
So it is the general picture of "quality" SNAP job in NYS state.
This picture NYS OIG L. Scott refused to investigate.

**USDA**
**United States Department of Agriculture**

*Exh 4*

Food and
Nutrition
Service

Park Office
Center

3101 Park
Center Drive
Alexandria
VA 22302

AUG 10 2016

SUBJECT:    SNAP – Fiscal Year 2017 Cost-of-Living Adjustments

TO:            All Regional Directors
                Supplemental Nutrition Assistance Program

This memorandum provides the fiscal year (FY) 2017 Cost-of-Living
Adjustments (COLA) to the Supplemental Nutrition Assistance Program (SNAP)
maximum allotments, income eligibility standards, and deductions.  Under the
Food and Nutrition Act of 2008, as amended, COLAs are effective as of
October 1, 2016.

Attached are FY 2017 COLAs for the 48 contiguous States and D.C., Alaska,
Hawaii, Guam, and the U.S. Virgin Islands.

Maximum allotments will remain unchanged for the 48 States and D.C., Guam,
the U.S. Virgin Islands, and Alaska.  For a family of four receiving a maximum
allotment, benefits will continue to be $649.  Maximum allotments will increase
for Hawaii.

The shelter cap values increased by $13 to $517 for the 48 States and D.C.  The
shelter cap values for Alaska, Hawaii, Guam and the U.S. Virgin Islands also
increased.  The minimum standard deduction for household sizes 1 through 3
increased to $157 a month for the 48 States and D.C.  Alaska, Hawaii, Guam,
and the U.S. Virgin Islands also experienced minimal increases in their standard
deduction amounts for certain household sizes.

The resource limit for households will remain unchanged for the 48 States and
the District of Columbia, Alaska, Hawaii, Guam, and the U.S. Virgin Islands at
$2,250.  The resource limit for households where at least one person is age 60 or
older, or is disabled, will remain unchanged at $3,250.

Regional Offices should ensure that their States are appraised of these changes.
State agencies with questions regarding these adjustments should contact their
respective Regional Office representatives.  Regional Office staff with questions
should contact Sasha Gersten-Paal at Sasha.Gersten-Paal@fns.usda.gov.

*Lizbeth Silbermann*

Lizbeth Silbermann
Director
Program Development Division

Attachment

USDA is an Equal Opportunity Provider, Employer and Lender

*Exh 4*

## SUPPLEMENAL NUTRITION ASSISTANCE PROGRAM
### OCTOBER 1, 2016 TO SEPTEMBER 30, 2017

### Net Monthly Income Eligibility Standards
### (100 Percent of Poverty Level)

| Household Size | 48 States, DC, Guam, Virgin Islands | Alaska | Hawaii |
|---|---|---|---|
| 1 | $990 | $1,237 | $1,140 |
| 2 | $1,335 | $1,669 | $1,536 |
| 3 | $1,680 | $2,100 | $1,933 |
| 4 | $2,025 | $2,532 | $2,330 |
| 5 | $2,370 | $2,964 | $2,726 |
| 6 | $2,715 | $3,395 | $3,123 |
| 7 | $3,061 | $3,827 | $3,520 |
| 8 | $3,408 | $4,260 | $3,918 |
| Each additional member | $347 | $434 | $399 |

### Gross Monthly Income Eligibility Standards
### (130 Percent of Poverty Level)

| Household Size | 48 States, DC, Guam, Virgin Islands | Alaska | Hawaii |
|---|---|---|---|
| 1 | $1,287 | $1,608 | $1,481 |
| 2 | $1,736 | $2,169 | $1,997 |
| 3 | $2,184 | $2,730 | $2,513 |
| 4 | $2,633 | $3,292 | $3,028 |
| 5 | $3,081 | $3,853 | $3,544 |
| 6 | $3,530 | $4,414 | $4,060 |
| 7 | $3,980 | $4,975 | $4,575 |
| 8 | $4,430 | $5,538 | $5,093 |
| Each additional member | $451 | $564 | $518 |

### Gross Monthly Income Eligibility Standards For Households
### Where Elderly Disabled Are A Separate Household
### (165 Percent of Poverty Level)

| Household Size | 48 States, DC, Guam, Virgin Islands | Alaska | Hawaii |
|---|---|---|---|
| 1 | $1,634 | $2,041 | $1,880 |
| 2 | $2,203 | $2,753 | $2,535 |
| 3 | $2,772 | $3,465 | $3,189 |
| 4 | $3,342 | $4,178 | $3,844 |
| 5 | $3,911 | $4,890 | $4,498 |
| 6 | $4,480 | $5,602 | $5,153 |
| 7 | $5,051 | $6,314 | $5,807 |
| 8 | $5,623 | $7,029 | $6,464 |
| Each additional member | $572 | $715 | $658 |

Exh 4

### SUPPLEMENAL NUTRITION ASSISTANCE PROGRAM
### MAXIMUM MONTHLY ALLOTMENTS
### OCTOBER 1, 2016 TO SEPTEMBER 30, 2017

### MAXIMUM SNAP ALLOTMENTS

| Household Size | 48 States and DC |
|---|---|
| 1 | $194 |
| 2 | $357 |
| 3 | $511 |
| 4 | $649 |
| 5 | $771 |
| 6 | $925 |
| 7 | $1,022 |
| 8 | $1,169 |
| Each additional person | $146 |

| Household Size | Guam |
|---|---|
| 1 | $287 |
| 2 | $526 |
| 3 | $753 |
| 4 | $957 |
| 5 | $1,136 |
| 6 | $1,364 |
| 7 | $1,507 |
| 8 | $1,723 |
| Add on | $215 |

| Household Size | Virgin Islands |
|---|---|
| 1 | $250 |
| 2 | $459 |
| 3 | $657 |
| 4 | $835 |
| 5 | $991 |
| 6 | $1,189 |
| 7 | $1,315 |
| 8 | $1,503 |
| Add on | $188 |

| Household Size | Alaska | | |
|---|---|---|---|
| | Urban | Rural 1 | Rural 2 |
| 1 | $237 | $302 | $368 |
| 2 | $435 | $554 | $675 |
| 3 | $622 | $794 | $966 |
| 4 | $790 | $1,008 | $1,227 |
| 5 | $939 | $1,197 | $1,457 |
| 6 | $1,127 | $1,437 | $1,749 |
| 7 | $1,245 | $1,588 | $1,933 |
| 8 | $1,423 | $1,815 | $2,209 |
| Add on | $178 | $227 | $276 |

USDA is an Equal Opportunity Provider, Employer and Lender

Exh 4

| Household Size | Hawaii |
|---|---|
| 1 | $354 |
| 2 | $650 |
| 3 | $931 |
| 4 | $1,182 |
| 5 | $1,404 |
| 6 | $1,685 |
| 7 | $1,862 |
| 8 | $2,128 |
| Add on | $266 |

### MINIMUM SNAP ALLOTMENTS
### OCTOBER 1, 2016 TO SEPTEMBER 30, 2017

| Household Size | 48 States and DC | Guam | U.S. Virgin Islands | Alaska | | | Hawaii |
|---|---|---|---|---|---|---|---|
| | | | | Urban | Rural 1 | Rural 2 | |
| 1 - 2 | $16 | $23 | $20 | $19 | $24 | $29 | $28 |

### SUPPLEMENAL NUTRITION ASSISTANCE PROGRAM
### DEDUCTIONS
### OCTOBER 1, 2016 TO SEPTEMBER 30, 2017

### STANDARD DEDUCTIONS

| Area | Household Size | | | | |
|---|---|---|---|---|---|
| | 1 -2 | 3 | 4 | 5 | 6+ |
| 48 States and DC | $157 | $157 | $168 | $197 | $226 |
| Alaska | $268 | $268 | $268 | $268 | $282 |
| Hawaii | $221 | $221 | $221 | $227 | $260 |
| Guam | $315 | $315 | $337 | $394 | $451 |
| Virgin Islands | $138 | $140 | $168 | $197 | $226 |

### MAXIMUM SHELTER DEDUCTIONS

| Area | Maximum Amount |
|---|---|
| 48 States and DC | $517 |
| Alaska | $826 |
| Hawaii | $697 |
| Guam | $607 |
| Virgin Islands | $408 |

USDA is an Equal Opportunity Provider, Employer and Lender

Exh 5

https://www.fns.usda.gov/snap/cost-living-adjustment-cola-information

# Supplemental Nutrition Assistance Program (SNAP)

## Cost of Living Adjustment (COLA) Information

Last Published: 11/28/2016

We adjust SNAP maximum allotments, deductions, and income eligibility standards at the beginning of each Federal fiscal year. **The changes are based on changes in the cost of living. COLAs take effect on October 1 each year.**

Maximum allotments are calculated from the cost of a market basket based on the Thrifty Food Plan for a family of four, priced in June that year. The maximum allotments for households larger and smaller than four persons are determined using formulas that account for economies of scale. Smaller households get slightly more per person than the four-person household. Larger households get slightly less.

Income eligibility standards are set by law. Gross monthly income limits are set at 130 percent of the poverty level for the household size. Net monthly income limits are set at 100 percent of poverty.

## Income Eligibility Standards

2017    2016    2015    2014    2013    2011    2010    2009    2008    2007    2006    2005    2004

## Maximum Allotments and Deductions

2017    2016    2015    2014-2*    2014-1*    2013    2012    2011    2010    2009-2    2009-1    2008    200'

2006    2005    2004

NYC ONLY
GENERAL INFORMATION SYSTEM
GIS 17 TA/DC001

 NEW YORK   Office of Temporary
and Disability Assistance   *Exh 6*

**DATE:**    January 5, 2017

**TO:**    Subscribers

**SUGGESTED DISTRIBUTION:**    Commissioners, TA, SNAP and HEAP Directors, WMS Coordinators

**FROM:**    Jeffrey Gaskell, Assistant Deputy Commissioner
Employment and Income Support Programs

**SUBJECT:**    SSI COLA NYSNIP Standard Benefit Amount Adjustments

**EFFECTIVE DATE:**    Immediately

**CONTACT PERSON:**    SNAP Bureau at: (518) 473-1469


## Background

The Social Security Administration (SSA) annually evaluates the *Consumer Price Index for Urban Wage Earners and Clerical Workers* (CPI-W) data to determine if a cost of living adjustment (COLA) should be made to RSDI (regular Social Security and Social Security Disability benefits) and federal Supplemental Security Income (SSI) benefits to reflect an increase or decrease in the cost of living. Historically, when COLA adjustments have been required, the adjustments take place effective January 1st of each year.

Effective January 1, 2017, RSDI and SSI recipients will receive a 0.3% COLA increase. SSA and SSI benefits will be increased accordingly.

16 INF-18, dated 12/30/16, announced the COLA increase to SSI benefits

## Purpose

The purpose of this GIS is to inform the local social services districts about the effect of the annual Social Security COLA on Supplemental Nutrition Assistance Program (SNAP) benefits, and, in particular, on the benefits of SNAP recipients participating in the New York State Nutrition Improvement Project (NYSNIP) benefits.

## Program Implications

As part of the 2017 January COLA mass re-budgeting/authorization (MRB/A), in response to the 0.3% increase in RSDI and SSI benefits, SNAP benefit levels for affected SNAP households will be adjusted effective January 1, 2017. Information regarding the WMS MRB/A of Temporary Assistance and SNAP benefit levels for New York City WMS was provided in WLM 2016-00266. Information **regarding the SSI COLA and details on its effect on SNAP and SNAP case processing is also provided to New York City Human Resources Administration (HRA) workers in HRA Policy Directive PD # 16-25-ELI.** The new NYSNIP SNAP benefit amounts (see attached table of NYSNIP Benefit Levels effective 01/01/17) are effective for any **NYSNIP SNAP Shelter Type** budgets with a **FROM Date** of January 1, 2017 or later.

*Exh 6*

**NOTICE OF INTENT TO CHANGE BENEFITS:**
**NYC PA COLA**

Notice Date: **December 6, 2016**

Case Number:
Loc. Off./Unit/Worker:    //

General Telephone No. for
Questions or Help:    - -

---

**This Notice is to tell you that this agency intends to change your benefits as follows:**

**PUBLIC ASSISTANCE GRANT** YOUR PUBLIC ASSISTANCE GRANT WILL BE **REDUCED FROM $0.00 TO $0.00**
EFFECTIVE JANUARY 1, **2017**.

The reason for this action is that according to our records you and/or your dependent(s) are receiving Social Security and/or SSI payments and/or Veteran's Benefits from the Federal Government and a Family Assistance (FA) or Safety Net Assistance (SNA) grant from this Department. As you probably know, Congress has passed a Law (Public, 93-233) providing for an automatic cost of living adjustment in Social Security and/or SSI benefits and/or Veteran's Benefits. This has resulted in an **increase of 0.3** percent which will take effect in December **2016** and be contained in payments received in **January 2017**. Under Law these increases must be counted in determining the amount of the grant you receive from this Department. However, SSI grants is never used to calculate FA payments. SSI can only be counted in SNA cases when the SSI recipient is also receiving SNA.

**INCREASE TO SOCIAL SECURITY/SSI/VETERAN'S BENEFITS**

WE CALCULATE THAT STARTING **JANUARY 2017** THE MONTHLY FEDERAL BENEFIT(S) OF YOU AND/OR YOUR DEPENDENTS WILL BE INCREASED BY A TOTAL OF $

Because of this increase, your FA or SNA grant must be reduced by an equal amount.

This decision is based on Department Regulation 352.29.

**MEDICAL ASSISTANCE:** Your Medical Assistance will continue unchanged. This decision is based on Department Regulation 360-3.3.

**Supplemental Nutrition Assistance Program (SNAP):** Even though your public assistance grant will change, your SNAP benefits will not change unless you get a separate notice telling you that your SNAP benefits will change. This decision is based on Department Regulation(s) 387.10 and 387.15.

If you do not understand this notice or are in disagreement with the action we are taking, you may request a conference. To do so, visit your center or call on the telephone as soon as possible.

**THE TELEPHONE NUMBER TO CALL FOR A CONFERENCE IS    - - .**

BY REQUESTING A CONFERENCE YOU ARE NOT GIVING UP YOUR RIGHTS TO A FAIR HEARING PROVIDED THAT YOU REQUEST A HEARING WITHIN THE TIME LIMITS DESCRIBED ON THE ENCLOSED PAGE. SEE THE ENCLOSED PAGE OR APPEAL PROCESS INFORMATION.

SEE BELOW FOR EXPLANATION OF YOUR NEW PA GRANT.

| | | |
|---|---|---|
| PRE-ADD / CONCESIÓN PRE-SUMADA | SSA INCOME / INGRESO DE SEGURO SOCIAL | |
| SHELTER / VIVIENDA | SSI INCOME / INGRESO DE SSI | |
| ENERGY / ENERGÍA | OTHER INCOME / OTRO INGRESO | |
| ENERGY SUPPLEMENT / SUPLEMENTO DE ENERGÍA | TOTAL INCOME / INGRESO TOTAL | |
| OTHER NEEDS / OTRAS NECESIDASES | | |
| TOTAL NEEDS / TOTAL DE NECESIDADES | PA GRANT / CONCESIÓN DE PA | |

Sincerely,



P.O. BOX 02-9121
**Brooklyn GPO**
Brooklyn, N.Y. 11202-9121

**_The City Of New York_**
**HUMAN RESOURCES ADMINISTRATION**
**Family Independence Administration**

CONFERENCE PHONE:   -   -
**NÚMERO PARA CONFERENCIA**

Center:
**CASE No:**
        :

**FAM SIZE:**
**DATE:**        **December 6, 2016**
**FECHA:**      **6 de diciembre de 2016**

---

### NOTICE OF MASS CHANGE
### PREAVISO DE REDUCCIÓN EN SU SUBSIDIO SNAP

DEAR SIR/MADAM:
ESTIMADO(A) SR./SRA./SRITA:

THIS IS TO INFORM YOU THAT <u>YOUR SNAP BENEFITS MAY BE REDUCED</u> EFFECTIVE **JANUARY 1, 2017** FOR THE FOLLOWING REASON:

BEGINNING JANUARY **2017**, SOCIAL SECURITY, SSI AND/OR VETERAN'S BENEFITS WILL INCREASE **BY 0.3%**. IF YOU ARE IN RECEIPT OF ANY OF THESE FEDERAL BENEFITS, THIS INCREASE IN INCOME TO YOUR HOUSEHOLD MUST BE CONSIDERED IN DETERMINING YOUR  SNAP  BENEFIT LEVEL. *IF YOU ARE IN RECEIPT OF BOTH SOCIAL SECURITY BENEFITS AND SSI, YOUR JANUARY SSI BENEFITS WILL BE REDUCED BY THE AMOUNT OF YOUR SOCIAL SECURITY BENEFIT INCREASE. THESE INCOME CHANGES MUST ALSO BE CONSIDERED IN DETERMINING YOUR  SNAP BENEFITS.*

BEGINNING IN **JANUARY 2017**, IF YOU ARE AN SSI RECIPIENT LIVING ALONE IN THE COMMUNITY WHO IS PARTICIPATING IN THE NEW YORK STATE NUTRITION IMPROVEMENT PROJECT (NYSNIP) AND YOUR RENT IS ABOVE or below **$247.00** and you either incur a separate bill or charge for heating or air conditioning costs or you have received Home Energy Assistance (HEAP) benefits of more than $20 during the month this letter is dated or the during the immediately preceding twelve (12) months , YOUR MONTHLY SNAP BENEFIT OF **$194.00** WILL NOT CHANGE.  HOWEVER, IF YOUR RENT IS above $247.00 and you do not incur a separate bill or charge for heating or air conditioning costs or have not received Home Energy Assistance (HEAP) benefits of more than $20 during the month this letter is dated or the during the immediately preceding twelve (12) months,  BEGINNING IN **JANUARY 2017**, YOU WILL RECEIVE **$26** IN SNAP BENEFITS and if you receive income in addition to SSI, you will receive **$17** in SNAP benefits.

**IF YOU ARE A NYSNIP PARTICIPANT WHO WAS** RECEIVING **$16** PER MONTH IN SNAP BENEFITS, BEGINNING IN JANUARY **2017** YOU WILL continue to RECEIVE **$16** PER MONTH.

PAGE 2 OF THIS NOTICE IS A FINANCIAL FACT SHEET WHICH SHOWS YOUR NEW **SNAP**  BENEFIT AMOUNT AND ALL THE INCOME INFORMATION ON OUR COMPUTER FILE THAT WAS USED TO CALCULATE YOUR NEW **SNAP** BENEFIT. WE HAVE ENCLOSED BUDGET WORKSHEETS WHICH YOU CAN USE TO DETERMINE WHETHER WE HAVE CORRECTLY DETERMINED YOUR NET **SNAP** INCOME. SEE 18 NYCRR 387.10, 387.12 AND 387.15.

COMENZANDO EN ENERO DE **2017**, LOS SUBSIDIOS DE SEGURO SOCIAL, SSI Y SUBSIDIOS PARA VETERANOS, AUMENTARÁN POR UN **0.3 %**. SI USTED RECIBE ALGUNO DE LOS SUBSIDIOS FEDERALES ANTES MENCIONADOS, ESTE AUMENTO EN EL INGRESO DE SU GRUPO FAMILIAR  DEBERÁ TOMARSE EN CUENTA EN EL CÁLCULO DEL MONTO DEL SUBSIDIO SNAP QUE USTED RECIBE. **SI USTED ACTUALMENTE RECIBE AMBOS SUBSIDIOS: SEGURO SOCIAL Y SSI, EL MONTO DEL SUBSIDIO DE SSI PARA EL MES DE ENERO SERÁ** REDUCIDO POR EL MONTO DEL AUMENTO EN SU SUBSIDIO DE SEGURO SOCIAL.*ESTOS CAMBIOS EN INGRESO TAMBIÉN DEBEN TOMARSE EN CUENTA EN EL CÁLCULO DE SU SUBSIDIO SNAP.*

COMENZANDO EN **ENERO DE 2017**, SI USTED ES UN BENEFICIARIO DE SSI QUE VIVE SOLO(A) EN LA COMUNIDAD Y PARTICIPA EN EL PROYECTO DE MEJORA NUTRICIONAL DEL ESTADO DE NUEVA YORK (NYSNIP) Y SU ALQUILER ES SUPERIOR o inferior a los **$247.00** y usted ya sea: recibe facturas o cargos por separado de calefacción o aire acondicionado, o ha recibido el Subsidio de Energía para el Hogar (HEAP) por un monto mayor de $20 en el mes de la fecha de esta carta o en los últimos 12 meses; EL MONTO MENSUAL DE SU SUBSIDIO SNAP DE **$194.00** NO CAMBIARÁ.   SIN EMBARGO, SI SU ALQUILER ES superior a los $247.00 y usted no incurre facturas o cargos por separado de calefacción o aire acondicionado o no ha recibido el Subsidio de Energía para el Hogar (HEAP) por un monto mayor a los $20 en el mes de la fecha de esta carta o en los últimos 12 meses; COMENZANDO EN **ENERO DE 2017**, USTED RECIBIRÁ **$26** EN SUBSIDIO SNAP y si usted recibe ingreso adicional al SSI, usted recibirá **$17** en subsidio SNAP.

**SI USTED ES UN PARTICIPANTE DEL PROYECTO DE MEJORA NUTRICIONAL DEL ESTADO DE NUEVA YORK (NYSNIP) QUE RECIBÍA** $16 AL MES EN SUBSIDIO SNAP, COMENZANDO EN ENERO DE **2017**, USTED CONTINUARÁ recibiendo **$16** AL MES.

LA PÁGINA 2 DE ESTE AVISO ES UNA HOJA DE DATOS FINANCIEROS LA CUAL MUESTRA SU NUEVO MONTO DE SUBSIDIO  **SNAP** COMO TAMBIÉN TODOS LOS DATOS SOBRE INGRESOS REGISTRADOS EN NUESTRO ARCHIVO COMPUTARIZADO Y EL CUAL FUE  UTILIZADO EN EL CÁLCULO DE SU NUEVO MONTO DE SUBSIDIO **SNAP**.HEMOS ADJUNTADO HOJAS DE CÁLCULO DE PRESUPUESTO LAS CUALES USTED PUEDE UTILIZAR PARA DETERMINAR SI HEMOS CALCULADO CORRECTAMENTE SU INGRESO NETO EN RELACIÓN CON LA SUBVENCIÓN **SNAP**. CONSULTE 18 NYCRR 387.10. 387.12 Y 387.15

ATENTAMENTE,



**USDA**

**United States Department of Agriculture**

*Exh.7*

## Official USDA Food Plans: Cost of Food at Home at Four Levels, U.S. Average, March 2017 [1]

| Age-gender groups | Weekly cost [2] | | | | Monthly cost [2] | | | |
|---|---|---|---|---|---|---|---|---|
| | Thrifty plan | Low-cost plan | Moderate-cost plan | Liberal plan | Thrifty plan | Low-cost plan | Moderate-cost plan | Liberal plan |
| **Individuals [3]** | | | | | | | | |
| **Child:** | | | | | | | | |
| 1 year | $21.60 | $28.80 | $32.60 | $40.00 | $93.70 | $124.80 | $141.40 | $173.20 |
| 2-3 years | $23.70 | $30.20 | $36.40 | $44.30 | $102.50 | $130.70 | $157.60 | $192.00 |
| 4-5 years | $24.80 | $31.20 | $38.70 | $47.30 | $107.40 | $135.00 | $167.70 | $204.90 |
| 6-8 years | $31.60 | $43.90 | $52.90 | $62.70 | $136.80 | $190.10 | $229.20 | $271.70 |
| 9-11 years | $35.60 | $47.40 | $61.40 | $71.40 | $154.20 | $205.40 | $265.80 | $309.40 |
| **Male:** | | | | | | | | |
| 12-13 years | $38.40 | $54.50 | $68.40 | $80.20 | $166.50 | $236.30 | $296.50 | $347.50 |
| 14-18 years | $39.60 | $55.40 | $70.40 | $80.70 | $171.50 | $239.90 | $305.00 | $349.80 |
| 19-50 years | $42.50 | $55.00 | $68.90 | $84.70 | $184.20 | $238.30 | $298.40 | $367.00 |
| 51-70 years | $38.70 | $51.80 | $64.50 | $77.90 | $167.80 | $224.50 | $279.40 | $337.50 |
| 71+ years | $39.00 | $51.20 | $63.40 | $78.60 | $169.10 | $221.70 | $274.90 | $340.50 |
| **Female:** | | | | | | | | |
| 12-13 years | $38.40 | $46.90 | $56.50 | $69.20 | $166.20 | $203.10 | $244.80 | $300.00 |
| 14-18 years | $37.70 | $46.90 | $56.70 | $69.90 | $163.20 | $203.10 | $245.60 | $302.70 |
| 19-50 years | $37.70 | $47.60 | $58.70 | $75.00 | $163.30 | $206.30 | $254.60 | $325.00 |
| 51-70 years | $37.30 | $46.30 | $57.80 | $69.70 | $161.50 | $200.70 | $250.40 | $302.10 |
| 71+ years | $36.20 | $45.80 | $56.90 | $68.60 | $156.90 | $198.40 | $246.50 | $297.40 |
| **Families** | | | | | | | | |
| **Family (Male & Female) of 2: [4]** | | | | | | | | |
| 19-50 years | $88.20 | $112.90 | $140.40 | $175.70 | $382.30 | $489.00 | $608.20 | $761.20 |
| 51-70 years | $83.60 | $107.90 | $134.50 | $162.40 | $362.20 | $467.70 | $582.70 | $703.60 |
| **Family of 4:** | | | | | | | | |
| Couple | | | | | | | | |
| (Male & Female), | | | | | | | | |
| 19-50 years and | | | | | | | | |
| children— | | | | | | | | |
| 2-3 and 4-5 years | $128.60 | $163.90 | $202.70 | $251.30 | $557.40 | $710.30 | $878.20 | $1088.90 |
| 6-8 and 9-11 years | $147.40 | $193.90 | $241.80 | $293.80 | $638.50 | $840.10 | $1047.90 | $1273.10 |

[1] The Food Plans represent a nutritious diet at four different cost levels. The nutritional bases of the Food Plans are the 1997-2005 Dietary Reference Intakes, 2005 Dietary Guidelines for Americans, and 2005 MyPyramid food intake recommendations. In addition to cost, differences among plans are in specific foods and quantities of foods. Another basis of the Food Plans is that all meals and snacks are prepared at home. For specific foods and quantities of foods in the Food Plans, see *Thrifty Food Plan, 2006* (2007) and *The Low-Cost, Moderate-Cost, and Liberal Food Plans, 2007* (2007). All four Food Plans are based on 2001-02 data and updated to current dollars by using the Consumer Price Index for specific food items.

[2] All costs are rounded to nearest 10 cents.

[3] The costs given are for individuals in 4-person families. For individuals in other size families, the following adjustments are suggested: 1-person—add 20 percent; 2-person—add 10 percent; 3-person—add 5 percent; 4-person—no adjustment; 5- or 6-person—subtract 5 percent; 7- (or more) person—subtract 10 percent. To calculate overall household food costs, (1) adjust food costs for each person in household and then (2) sum these adjusted food costs.

[4] Ten percent added for family size adjustment.

This file may be accessed on the Center for Nutrition Policy and Promotion's home page at: http://www.cnpp.usda.gov.
Issued April 2017.

*Exh 8*

**Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures**

**U.S. Department of Housing And Urban Development**

Office of Housing
Federal Housing Commissioner

NOT for submission to the Federal Government
Landlord's Official Record of Certification

OMB Approval Number 2502-0204

## Section A. Acknowledgements

Read this before you complete and sign this form HUD-50059

**Public Reporting Burden.**   The reporting burden for this collection of information is estimated to average 55 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information including suggestions for reducing this burden, to the Office of Management and Budget, Paperwork Reduction Project (2502-0204), Washington, DC 20503. The information is being collected by HUD to determine an applicant's eligibility, the recommended unit size, and the amount the tenant (s) must pay toward rent and utilities. HUD uses this information to assist in managing certain HUD properties, to protect the Government's financial interest, and to verify the accuracy of the information furnished. HUD or a Public Housing Authority (PHA) may conduct a computer match to verify the information you provide. This information may be released in accordance with HUD's Computer Matching Agreement (CMA) between the Social Security Administration and the Department of Health and Human Services. You must provide all of the information requested, including the Social Security Numbers (SSNs), unless exempted by 24 CFR 5.216, you, and all other household members, have and use. Giving the SSNs of all household members, unless exempted by 24 CFR 5.216, is mandatory; not providing the SSNs will affect your eligibility approval.  Failure to provide any information may result in a delay or rejection of your eligibility approval.

**Privacy Act Statement.**   The Department of Housing and Urban Development (HUD) is authorized to collect this information by the U.S. Housing Act of 1937, as amended (42 U.S.C. 1437 et. seq.); the Housing and Urban-Rural Recovery Act of 1983 (P.L. 98-181); the Housing and Community Development Technical Amendments of 1984 (P.L. 98-479); and by the Housing and Community Development Act of 1987 (42 U.S.C. 3543).

**Tenant(s)' Certification -**  I/We certify that the information in Sections C, D, and E of this form are true and complete to the best of my/our knowledge and belief. I/We understand that I/we can be fined up to $10,000, or imprisoned up to five years, or lose the subsidy HUD pays and have my/our rent increased, if I/we furnish false or incomplete information.

**Owner's Certification -**   I certify that this Tenant's eligibility, rent and assistance payments have been computed in accordance with HUD's regulations and administrative procedures and that all required verifications were obtained.

**Warning to Owners and Tenants.**   By signing this form, you are indicating that you have read the above Privacy Act Statement and are agreeing with the applicable Certification.

**False Claim Statement.**   Warning: U.S. Code, Title 31, Section 3729, False Claims, provides a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages for any person who knowingly presents, or causes to be presented, a false or fraudulent claim; or who knowingly makes, or caused to be used, a false record or statement; or conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

## Certification Summary from Page 2

| Name of Project | Effective Date | Certification Type | Anticipated Voucher Date |
|---|---|---|---|
| **Council Towers II** | 2/1/2017 | **AR** | 2/1/2017 |

| Head of Household | Total Tenant Payment | Assistance Payment | Tenant Rent |
|---|---|---|---|
| **VAPNE, GENRIKH** | $352 | $438 | $307 |

| Unit Number | Extenuating Circumstances Code |
|---|---|
| **10G** | |

## Tenant Signatures

| Head of Household | Date | Other Adult | Date |
|---|---|---|---|
| *G. Vapne* | *12/20/2016* | | |
| Spouse/Co-Head | Date | Other Adult | Date |
| | *12/20/2016* | | |
| Other Adult | Date | Other Adult | Date |
| Other Adult | Date | Other Adult | Date |
| Other Adult | Date | Other Adult | Date |
| Other Adult | Date | Other Adult | Date |
| Other Adult | Date | Other Adult | Date |

## Owner/Agent Signature

| Owner/Agent | Date |
|---|---|
| | |

Previous versions of this form are obsolete.
This form also replaces HUD-50059-D,-E,-F,&-G.

Page 1 of 2

form **HUD-50059** (06/2014)
ref. HB 4350.3 Rev. 1

*Exh 8*

| Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures | U.S. Department of Housing And Urban Development | For Personal Records ONLY - not for Submission to the Federal Government |
|---|---|---|
| | Office of Housing<br>Federal Housing Commissioner | Record for Landlords |

## Section B. Summary Information

| | | |
|---|---|---|
| 1.Project Name **Council Towers II** | 12.Effective Date **2/1/2017** | 21.Unit Number **10G** |
| | 13.Anticipated Voucher Date **2/1/2017** | 22.No. of Bedrooms **1** |
| 2.Subsidy Type **7-Section 202 PRAC** | 14.Next Recertification Date **2/1/2018** | 23.Building ID |
| 3.Secondary Subsidy Type | | 24.Unit Transfer Code **N** |
| 4.Property ID | | 25.Previous Unit No. |
| 5.Project Number **012EE095** | 15.Project Move-In Date **10/7/1996** | 26.Security Deposit **$225.00** |
| 6.Contract Number **NY36S931028** | 16.Certification Type **AR** | 27.236 Basic/BMIR Rent **$0.00** |
| 7.Project IMAX ID **TRACM32077** | 17.Action Processed | 28.Market Rent **$0.00** |
| 8.Plan of Action Code | 18. Correction Type | 29.Contract Rent **$745.00** |
| 9.HUD-Owned Project? **N** | 19.EIV Indicator | 30.Utility Allowance **$45.00** |
| 10.Previous Housing Code | 20.Prev. Subsidy Type | 31.Gross Rent **$790.00** |
| 11.Displacement Status Code | | 32.TTP at RAD Conversion **$0.00** |

## Section C. Household Information

| 33. No. | 34. Last Name | 35. First Name | 36. MI | 37. Rel. | 38. Sex | 39. Race | 40. Eth. | 41. Birth Date | 42. Special Status | 43. Stdnt Stat. | 44. ID Code (SSN) | 45. SSN Excp | 46. Ctzn Code | 47. Alien Reg. Number | 48. Age | 49. Work Codes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | VAPNE | GENRIKH | | H | M | W | 2 | 9/7/1933 | E | | 111806578 | | | A071157959 | 83 | |
| 2 | VAPNE | ROZA | | S | F | W | 2 | 7/5/1935 | E | | 111807393 | | | A071157960 | 81 | |
| 3 | | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | | |

| | | |
|---|---|---|
| 50.Family has Mobility Disability? **N** | 53.Number of Family Members **2** | 57.Expected Family Addition - Adoption **0** |
| 51.Family has Hearing Disability? **N** | 54.Number of Non-Family Members **0** | 58.Expected Family Addition - Pregnancy **0** |
| 52.Family has Visual Disability? **N** | 55.Number of Dependents **0** | 59.Expected Family Addition - Foster Children **0** |
| | 56.Number of Eligible Members **0** | |
| 60.Previous Head Last Name | | 63.Active Full Cert. Effective Date |
| 61.Previous Head First Name | | 64.Previous Head ID |
| 62.Previous Head Middle Initial | | 65.Previous Head Birth Date |

## Section D. Income Information | Section E. Asset Information

| 66. Mbr. No. | 67. Income Type Code | 68. Amount | 69. SSN Benefits Claim No. | 75. Mbr. No. | 76. Description | 77. Status | 78. Cash Value | 79. Actual Yearly Income | 80. Date Divested |
|---|---|---|---|---|---|---|---|---|---|
| 1 | SSI | $6,618 | 6578 | 1 | Checking account | C | $92 | $0 | |
| 1 | SSI | $624 | 6578 | 2 | Checking account | C | $58 | $0 | |
| 2 | SSI | $6,618 | 7393 | | | | | | |
| 2 | SSI | $624 | | | | | | | |

| | | | |
|---|---|---|---|
| 70.Total Employment Income | $0 | 81.Total Cash Value of Assets | $150 |
| 71.Total Pension Income | $14,484 | 82.Actual Income from Assets | $0 |
| 72.Total Public Assistance Income | $0 | 83.HUD Passbook Rate | 0.00% |
| 73.Total Other Income | $0 | 84.Imputed Income from Assets | $0 |
| 74.Total Non-Asset Income | $14,484 | 85.Asset Income | $0 |

## Section F. Allowances & Rent Calculation

| | | | | | |
|---|---|---|---|---|---|
| 86.Total Annual Income | $14,484 | 97.Deduction for Dependents | $0 | 108.Total Tenant Payment | $352 |
| 87.Low Income Limit | $58,000 | 98.Child Care Expense (work) | $0 | 109.TTP Before Override | |
| 88.Very Low Income Limit | $36,250 | 99.Child Care Expense (school) | $0 | 110.Tenant Rent | $307 |
| 89.Extremely Low Income Limit | $21,800 | 100.3% of Income | $435 | 111.Utility Reimbursement | $0 |
| 90.Current Income Status | 0 | 101.Disability Expense | $0 | 112.Assistance Payment | $438 |
| 91.Eligibility Universe Code | | 102.Disability Deduction | $0 | 113.Welfare Rent | $0 |
| 92.Sec. 8 Assist. 1984 Indicator | | 103.Medical Expense | $0 | 114.Rent Override | |
| 93.Income Exception Code | | 104.Medical Deduction | $0 | 115.Hardship Exemption | |
| 94.Police / Security Tenant? | N | 105.Elderly Family Deduction | $400 | 116.Waiver Type Code | |
| 95.Survivor of Qualifier? | N | 106.Total Deductions | $400 | 117.Eligibility Check Not Required | |
| 96.Household Citizenship Eligibility | N | 107.Adjusted Annual Income | $14,084 | 118.Extenuating Circumstances Code | |

Previous versions of this form are obsolete.
This form also replaces HUD-50059-D,-E,-F,&-G.

Page 2 of 2

form **HUD-50059** (06/2014)
ref. HB 4350.3 Rev. 1

*Exh 9* 

https://medicaid-help.org/New-York-Qualifications?utm_term=medicaid%20eligibility&utm_content=Qualify%20-%20EX&utm_source=bing&utm_medium=cpc&utm_campaign=Search_NY_Geo_Medicaid-Help

## Qualifications for Medicaid in New York

New York Medicaid eligibility requirements have expanded to accommodate a variety of patients, totaling more than 6 million covered in June 2016, alone. Thanks to Medicaid benefits eligibility expansion, uninsured rates in NY have significantly fallen. Adults with incomes up to 138 percent of the Federal Poverty Level (FPL) are encouraged to review how to qualify for Medicaid. But, exactly what are the requirements for Medicaid in New York?

In order to understand who is eligible for Medicaid in New York, review the below topics, which are covered in detail:

• Who is eligible for New York Medicaid?
• What are the income requirements for Medicaid?
• What are the Medicaid eligibility requirements in New York?
• What are the Medicaid application guidelines?

Who is eligible for New York Medicaid?

New York Medicaid eligibility determination is based on several factors developed by the state department. Medicaid benefits eligibility applies to those who cannot pay their medical bills, those who currently receive Supplemental Security Income (SSI) and those who meet the Medicaid income requirements in New York.

Before Medicaid requirements can be met, Medicaid-eligible applicants must first fall into one of the two following categories:
1. Adults with an income that is no more than 138 percent of the Federal Poverty Level (FPL)
2. Infants and pregnant women with an income that is no more than 218 percent of the FPL

To decide on if you are eligible for Medicaid in New York, the state strictly adheres to a specific system. The Modified Adjusted Gross Income (MAGI) is the sole strategy in reading if you qualify for Medicaid in New York or not. A simple way to understand Medicaid qualifications in NY, MAGI is utilized for the calculation of a single set of income eligibility rules across the entire health care Marketplace.

What are the income requirements for Medicaid?

Medicaid income requirements are based on resource levels in the state. Income requirements for Medicaid differ for those whole are blind, disabled or above age 65, in comparison to single individuals and couples without children. In addition, your assets are taken into account. When it comes to bypassing the financial Medicaid requirements, you can only report more money than the state allows if you are a child, disabled or blind, above 65 or pregnant.

Some patients who want to be accepted for Medicaid benefits eligibility in NY will already have a pre-existing condition or a disability. The Medicaid Buy-In Program was designed for people in New York with incomes higher than the standard threshold who are still in employment. Vital healthcare insurance coverage can be retained when a person learns how to qualify for Medicaid in this program. In order to qualify into the Medicaid Buy-In Program, you must be a New York state resident, be at least 16 years old, have a gross income of $60,420 to $81,132, be employed on a part-time or full-time basis and have a Social Security Administration-defined disability.

What are the requirements for Medicaid in New York for the disabled? Disabilities must be confirmed by the Social Security Administration (SSA) and depending on income, a premium might be necessary. Getting in touch with the local Department of Social Services in New York is the best way to find out how to qualify for NY Medicaid Buy-In benefits.

What are the Medicaid eligibility requirements in New York?

When reviewing how to qualify for Medicaid in New York, there are factors beyond your income and the size of your household that are considered. And, these Medicaid qualifications are non-negotiable with the state. To qualify for Medicaid in NY, you must have several required items. You will need to have handy: proofs of United States citizenship and New York state residency, support of your current living arrangements, information regarding your marital status (such as marriage license), if applicable and your Social Security Number (SSN).

What are the Medicaid application guidelines?

Application guidelines for Medicaid in New York differ from other states, as you must adhere to specific instructions when submitting your paperwork. Since the qualifying criteria is spread into two groups – MAGI eligibility groups and non-MAGI eligibility groups, you must follow suit depending on the category in which you fall. Now that you understand income requirements for Medicaid, you can familiarize yourself with both eligibility groups.

What are the Medicaid application guidelines in NY for the MAGI groups? Categorized into the first group are foster care children, infants and children under 19, pregnant women, relatives of parents or caretakers, and beneficiaries in the Family Planning Benefit Program (FPBP).

A new adult group also falls into the MAGI eligibility groups. This group contains those eligible for Medicaid who are adults without dependents, including beneficiaries that:

• Are age 19 to 64
• Are not pregnant
• Are potentially certified disabled
• Lack Medicare and therefore require Medicaid

If you belong to any of the above groups, the state department requests that you apply for Medicaid through the New York State Department of Health Marketplace, when the time comes.

Non-MAGI eligibility requirements for Medicaid include recipients of:

• Medicare Savings Program (MSP)
• ADC-related Medically Needy
• Social Security Income (SSI)
• AIDS Health Insurance Program (AHIP)
• Medicaid Cancer Treatment Program (MCTP)

Those who belong to non-MAGI groups should proceed with Medicaid application procedures at their Local Department of Social Services offices.

To learn more about Medicaid application guidelines and procedures, review the "How to Apply for Medicaid in New York" page.

*Exh 10*

https://www.cms.gov/newsroom/mediareleasedatabase/press-releases/2016-press-releases-items/2016-11-10-2.html
2017 Medicare Parts A & B Premiums and Deductibles Announced
Date 2016-11-10    Title
2017 Medicare Parts A & B Premiums and Deductibles Announced
Contact    press@cms.hhs.gov

**2017 Medicare Parts A & B Premiums and Deductibles Announced**
Today, the Centers for Medicare & Medicaid Services (CMS) announced the 2017 premiums for the Medicare inpatient hospital (Part A) and physician and outpatient hospital services (Part B) programs.

**Medicare Part B Premiums/Deductibles**
Medicare Part B covers physician services, outpatient hospital services, certain home health services, durable medical equipment, and other items.
On October 18, 2016, the Social Security Administration announced that the cost-of-living adjustment (COLA) for Social Security benefits will be 0.3 percent for 2017. Because of the low Social Security COLA, a statutory "hold harmless" provision designed to protect seniors, will largely prevent Part B premiums from increasing for about 70 percent of beneficiaries. Among this group, the average 2017 premium will be about $109.00, compared to $104.90 for the past four years.
For the remaining roughly 30 percent of beneficiaries, the standard monthly premium for Medicare Part B will be $134.00 for 2017, a 10 percent increase from the 2016 premium of $121.80. Because of the "hold harmless" provision covering the other 70 percent of beneficiaries, premiums for the remaining 30 percent must cover most of the increase in Medicare costs for 2017 for all beneficiaries. This year, as in the past, the Secretary has exercised her statutory authority to mitigate projected premium increases for these beneficiaries, while continuing to maintain a prudent level of reserves to protect against unexpected costs. The Department of Health and Human Services (HHS) will work with Congress as it explores budget-neutral solutions to challenges created by the "hold harmless" provision.
"Medicare's top priority is to ensure that beneficiaries have affordable access to the care they need," said CMS Acting Administrator Andy Slavitt. "We will continue our efforts to improve affordability, access, and quality in Medicare."
Medicare Part B beneficiaries not subject to the "hold harmless" provision include beneficiaries who do not receive Social Security benefits, those who enroll in Part B for the first time in 2017, those who are directly billed for their Part B premium, those who are dually eligible for Medicaid and have their premium paid by state Medicaid agencies, and those who pay an income-related premium. These groups represent approximately 30 percent of total Part B beneficiaries.
CMS also announced that the annual deductible for all Medicare Part B beneficiaries will be $183 in 2017 (compared to $166 in 2016). Premiums and deductibles for Medicare Advantage and prescription drug plans are already finalized and are unaffected by this announcement.
Since 2007, beneficiaries with higher incomes have paid higher Medicare Part B monthly premiums. These income-related monthly premium rates affect roughly five percent of people with Medicare. The total Medicare Part B premiums for high income beneficiaries for 2017 are shown in the following table:

| Beneficiaries who file an individual tax return with income: | Beneficiaries who file a joint tax return with income: | Income-related monthly adjustment amount | Total monthly premium amount |
|---|---|---|---|
| Less than or equal to $85,000 | Less than or equal to $170,000 | $0.00 | $134.00 |
| Greater than $85,000 and less than or equal to $107,000 | Greater than $170,000 and less than or equal to $214,000 | 53.50 | 187.50 |
| Greater than $107,000 and less than or equal to $160,000 | Greater than $214,000 and less than or equal to $320,000 | 133.90 | 267.90 |
| Greater than $160,000 and less than or equal to $214,000 | Greater than $320,000 and less than or equal to $428,000 | 214.30 | 348.30 |
| Greater than $214,000 | Greater than $428,000 | 294.60 | 428.60 |

Premiums for beneficiaries who are married and lived with their spouse at any time during the taxable year, but file a separate return, are as follows:

| Beneficiaries who are married and lived with their spouse at any time during the year, but file a separate tax return from their spouse: | Income-related monthly adjustment amount | Total monthly premium amount |
|---|---|---|
| Less than or equal to $85,000 | $0.00 | $134.00 |
| Greater than $85,000 and less than or equal to $129,000 | 214.30 | 348.30 |
| Greater than $129,000 | 294.60 | 428.60 |

**Medicare Part A Premiums/Deductibles**
Medicare Part A covers inpatient hospital, skilled nursing facility, and some home health care services. About 99 percent of Medicare beneficiaries do not have a Part A premium since they have at least 40 quarters of Medicare-covered employment.
The Medicare Part A inpatient hospital deductible that beneficiaries pay when admitted to the hospital will be $1,316 per benefit period in 2017, an increase of $28 from $1,288 in 2016. The Part A deductible covers beneficiaries' share of costs for the first 60 days of Medicare-covered inpatient hospital care in a benefit period. Beneficiaries must pay a coinsurance amount of $329 per day for the 61st through 90th day of hospitalization ($322 in 2016) in a benefit period and $658 per day for lifetime reserve days ($644 in in 2016). For beneficiaries in skilled nursing facilities, the daily coinsurance for days 21 through 100 of extended care services in a benefit period will be $164.50 in 2017 ($161 in 2016).

*ER. 10*

Enrollees age 65 and over who have fewer than 40 quarters of coverage and certain persons with disabilities pay a monthly premium in order to receive coverage under Medicare Part A. Individuals who had at least 30 quarters of coverage or were married to someone with at least 30 quarters of coverage may buy into Part A at a reduced monthly premium rate, which will be $227 in 2017, a $1 increase from 2016. Uninsured aged and certain individuals with disabilities who have exhausted other entitlement and who have less than 30 quarters of coverage will pay the full premium, which will be $413 a month, a $2 increase from 2016.

| Part A Deductible and Coinsurance Amounts for Calendar Years 2016 and 2017 by Type of Cost Sharing | | |
|---|---|---|
| | 2016 | 2017 |
| Inpatient hospital deductible | $1,288 | $1,316 |
| Daily coinsurance for 61st-90th Day | 322 | 329 |
| Daily coinsurance for lifetime reserve days | 644 | 658 |
| Skilled Nursing Facility coinsurance | 161 | 164.50 |

For more information on the 2017 Medicare Parts A and B premiums and deductibles (CMS-8062-N, CMS-8063-N, CMS-8064-N), please visit https://www.federalregister.gov/public-inspection.

*Exh.ll*

Genrikh Vapne <gcnrikhjv@gmail.com>
to Jessica

Dear Ms. Shahin,

In preparing the complaint in federal court against FNS I ask to respond on the following questions:

1. How FNS calculate Maximum Allotment from Thrifty Food Plan data submitted by

USDA Center for Nutrition Policy and Promotion?

Response should be absolutely detailed and clear because of TFP monthly structure is known to me.

2. Who is responsible in FNS for calculation of Maximum Allotment, deductions, approving state SUA (name, position, email)

3. Is it exist official manual or instruction of such calculation? If yes, email it to me.

4. How this responsible person use COLA in calculation of Maximum Allotment, deductions ans SUA?

5. What official instruction he/she use for such COLA using?

6. Who and why did decide to use for Maximum Allotment calculation TFP June data (as I heard)?

7. Who and why did decide to recalculate SNAP norms from 1 October because of COLA while COLA is officially announced by SSA in December and paid in January next year?

8. As it is seen from https://www.fns.usda.gov/snap/cost-living-adjustment-cola-information the amounts of Maximum Allotment and Deductions were changed during 2009 and 2014 years. But it is known to me that in OTDA directions such changes were not reflected and announced to SNAP recipients. Why?

I hope to get responses without delay. Mr. Perdue has from me term of response only one month.

Genrikh Vapne <gcnrikhjv@gmail.com>
to stephanie kami

Dear Ms. Kaminsky,

Please, response on following questions:

1. How FPL (HHS) and COLA(SSA) are related to each other?

2. How and who in CMS determines amount of %% of FPL for Medicaid eligibility limits?

3. How and who in CMS determines amounts of Medicare premiums and deductions as dependent of FPL?

4. How Medicaid eligibility limit and Medicare premium and deduction depend of FPL amount?

5. Usually FPL is growing with grow of CPI because of market inflation. So benefit (income) of people with SSI grows because of COLA.. Does it mean that with growing of FPL Medicaid eligibility limit became less and Medicare premium and deduction become more then in previous year for such category of SSI recipients?

6. What form of directions to State Health agency CMS uses about Medicaid and Medicare updated norms (web link)?

I would be especially respect your responses if you will applied to them the references of laws, regulations and instructions (with web links) used by CMS for such calculations and determinations. Any web links responded on the questions above will be very valued.

I ask you to show this email to Ms.S.Verma.

I wait your soon response which is exclusively important for clarification of HHS policy connected with FPL in Court.

With best regards,

Genrikh Vapne

Genrikh Vapne <gcnrikhjv@gmail.com>
to judith arnold

Dear Ms. Arnold,

I made very careful study of issued by you GISs for 2017-2007 years related to Medicaid eligibility limits and Medicare A and B premiums and deductions.

As I saw such amounts are very connected with COLA and FPL and are dependent of such indexes.

So, please, respond on my following questions:

1. Which Federal and State laws, regulations, directions connect COLA and FPL with Medicaid and Medicare norms you publish every year?

2. Does it mean that with rose of COLA or FPL the Medicaid and Medicare norms are also rose?

3. Which speed of growth usually higher - speed of COLA or FPL growth or speed of Medicaid and Medicare norms growth?

4. What is the quality and quantity difference between COLA and FPL? (COLA is developed by SSA, FPL is developed by HHS).

5. Who and how in DOH calculate the norms of Medicaid and Medicare norms (manual, instructions and so on documents)?

6. Who and how in DOH determine the %% of Medicaid eligibility limits in relation to FPL?

7. How and by which laws and regulations you should communicate with HHS CMS for getting its agreement on your decisions about Medicaid and Medicare norms?

I understand that questions above are hard but your responses are very important to me as client of DOH and HRA who decided to make whole analysis of DOH and HHS policies related to Medicaid and Medicare. I am not sure that such policy is fair and legal. Ready to respond to you on any questions. May be you advice me some weblinks for getting response on my questions. I will be very appreciate you for such help.

Best wishes in your very valuable job for many years.

G.Vapne

*Exh. 12*

https://regs.health.ny.gov/volume-title-18/1702030412/section-360-47-standard-exemptions

VOLUME A (Title 18)
Chapter II - Regulations of the Department of Social Services
SubChapter B - Public Assistance
Article 2 - Determination of Eligibility--Categorical
Part 360 - MEDICAL ASSISTANCE
SubPart 360-4 - FINANCIAL ELIGIBILITY

## Title: Section 360-4.7 - Standard exemptions.

(b) Income. (1) After an applicant's/recipient's household size has been determined, all available income identified and all applicable disregards applied, the applicant's/recipient's net available household income will be compared to the appropriate standard, except as provided in paragraphs (2), (3) and (4) of this subdivision. The standard which will be used by the social services district is the MA standard shown on the following schedule, or the public assistance (PA) standard of need, whichever is higher.

Schedule MA-2

| Number in Household | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| *Annual | $6,700 | $9,700 | $9,800 | $10,200 | $11,900 | $13,600 | $15,300 |
| **Monthly | $559 | $809 | $817 | $850 | $992 | $1,134 | $1,275 |

*For each additional person after seven add $1,700.
**For each additional person after seven add $ 142.

(2) The net available income of a pregnant woman, an infant younger than one year of age, or a child born after September 30, 1983 who is at least six years of age but younger than 19 years of age will be compared to the highest of the following three amounts: the applicable MA standard; the applicable PA standard of need; or, 100 percent of the applicable poverty line, as set forth in the following schedule:

Poverty Lines effective January 1, 1996

| Number in Household | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| *Annual | $7,740 | $10,360 | $12,980 | $15,600 | $18,220 | $20,840 | $23,460 |
| **Monthly | $645 | $863 | $1,081 | $1,300 | $1,518 | $1,736 | $1,955 |

*For each additional person after seven add $2,620.
**For each additional person after seven add $ 218.

(3) If the net available household income of a pregnant woman or infant younger than one year of age exceeds the highest of the three amounts described in paragraph (2) of this subdivision, the social services district will compare it to 185 percent of the applicable federal poverty line, as set forth in the following schedule:

185 Percent of Poverty Lines effective January 1, 1996

| Number in Household | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| *Annual | $14,319 | $19,166 | $24,013 | $28,860 | $33,707 | $38,554 | $43,401 |
| **Monthly | $1,193 | $1,597 | $2,001 | $2,405 | $2,808 | $3,212 | $3,616 |

*For each additional person after seven add $4,847.
**For each additional person after seven add $ 403.

(4) The net available household income of a child at least one year of age but younger than six years of age will be compared to the applicable MA standard or the PA standard of need, whichever is higher. If the net available household income of such child exceeds the higher of these two amounts, the social services district will compare it to 133 percent of the applicable Federal poverty line, as set forth in the following schedule:

133 Percent of Poverty Lines effective January 1, 1996

| Number in Household | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| *Annual | $10,294 | $13,778 | $17,263 | $20,748 | $24,232 | $27,717 | $31,201 |
| **Monthly | $857 | $1,148 | $1,438 | $1,729 | $2,019 | $2,309 | $2,600 |

*For each additional person after seven add $3,484.
**For each additional person after seven add $ 290.

(5) To determine if an individual meets the income requirements to be a specified low income Medicare beneficiary as defined in 360-7.7(i) of this Part, compare the individual's income to 100 percent of the poverty line as defined in paragraph (2) of this subdivision and 120 percent of the poverty line as set forth in the following schedule. The individual's income meets the income requirements if it is greater than 100 percent, but less than 120 percent of the poverty line: The 110 Percent of Poverty Lines schedule in paragraph (5) of subdivision (b) of section 360-4.7 is amended to read as follows:

120 Percent of Poverty Lines effective January 1, 1996

| Number in Family | 1 | 2 |
|---|---|---|
| *Annual | $9,288 | $12,432 |
| **Monthly | $774 | $1,036 |

*Exh 13*

| OTDA-4357-EL (Rev. 10/12) | UPSTATE AND NYC MESSAGE |
|---|---|

GIS 14 TA/DC040

**GENERAL INFORMATION SYSTEM**
**Center for Employment & Economic Supports**

September 30, 2014
Page: 1

**TO**: Subscribers

**SUGGESTED DISTRIBUTION**: Commissioners, TA Directors, SNAP Directors, WMS Coordinators, Staff Development Coordinators, Financial Directors, MA Directors, Adult Services Directors

**FROM**: Phyllis Morris, Deputy Commissioner
Center for Employment and Economic Supports

**SUBJECT**: State Takeover of the SSI State Supplement Program (SSP)

**EFFECTIVE DATE**: October 1, 2014

**CONTACT PERSON**: CEES SSP Bureau at 518-408-4757

The purpose of this GIS is to provide social services districts (SSDs) with additional information on the SSI State Supplement Program (SSP) and the transition from federal to State administration of the program.

As you are aware, the Social Security Administration (SSA) has been administering the Supplemental Security Income (SSI) program and, under contract with New York State. the State Supplement Program (SSP). The single monthly benefit currently received by these individuals includes both the federal SSI benefit and the State funded SSP benefit. Effective with benefits issued October 1, 2014, the responsibility for the administration of the State Supplement Program will transfer from SSA to New York State OTDA.

OTDA's priority in converting SSP from federal to State administration is to minimize any adverse impact on recipients or on the agencies that serve this vulnerable group. Recipients have been notified about this change by both OTDA and SSA. Samples of the letters sent to recipients by OTDA were provided to local districts on August 1, 2014 (GIS 14 TA/DC029) and are also posted on the OTDA website. OTDA, in cooperation with SSA, has also conducted outreach to SSA Field Office staff, advocate and community action groups, congregate care facility operators, State agencies, HUD related housing authorities, financial institutions and elected officials. In addition, a message on the transition has been posted on the OTDA internet homepage.

Revised regulations that repeal the current Part 398 of Title 18 NYCRR and add a new Part 398 in relation to Supplemental Security Income Additional State Payments will become effective October 1. 2014.

*Exh 13*

| OTDA-4357-EL (Rev. 10/12) GIS 14 TA/DC040 | UPSTATE AND NYC MESSAGE |
|---|---|

**GENERAL INFORMATION SYSTEM**
**Center for Employment & Economic Supports**

**September 30, 2014**
Page: 2

## SSP Management

SSP will be administered and operated by the SSP Bureau within the Center for Employment and Economic Supports.

OTDA will not operate any walk in facilities for the program. A fully staffed Customer Support Center with a toll free number, 1-855-488-0541, will take calls Monday – Friday, 8:30 a.m. to 4:45 p.m. All SSP-related inquiries, including change reporting, should be directed to the Customer Support Center hotline. SSP may also be contacted by email at otda.sm.ssp@otda.ny.gov or by fax at 518-486-3459.

SSP case management will be conducted through a separate electronic system, which is not currently accessible to local districts.

Effective with October benefits, SSA will no longer report SSP benefits on the State On-Line Query (SOLQ) system. Local district staff may obtain SSP benefit information through WMS. GIS message 14 TA/DC036, sent on September 10, 2014, provided instructions on how to access SSP benefit information on WMS.

SSA will no longer collect certain SSP related information that has historically been included on the State Data Exchange (SDX) file passed to NYS. OTDA will update the SDX file with the SSP information before sending it to the downstream users. Information on SDX changes was distributed on May 6, 2014, via GIS 14 TA/WMS024. Revisions to the SDX manual are forthcoming.

Recipients will receive notices from both SSA and OTDA. OTDA generated notices are produced through the SSP system in both English and Spanish and are issued via a print vendor. Assistance in other languages is available by calling the Customer Support Center number. The notices are stored in the SSP system and will not be available in Computer Outlook to Laser Disc (COLD) system. Recipients who receive alternate format notices from SSA will also receive notices in the same format from SSP. Alternate formats include large print, Braille, audio and data CDs, registered mail, and readers.

Many of the SSP related forms have been posted to the OTDA website.

Recipients may obtain copies of notices and forms, including a Benefit Verification letter, by contacting the SSP Bureau.

SSP recipients are afforded appeal rights under NYS regulations through OTDA's Office of Administrative Hearings. The SSP Bureau is responsible for the preparation of fair hearing materials. SSP recipients have the option of telephone or in person hearings.

*Exb. 13*

| OTDA-4357-EL (Rev. 10/12) | UPSTATE AND NYC MESSAGE |
|---|---|
| GIS 14 TA/DC040 | |

**GENERAL INFORMATION SYSTEM**
**Center for Employment & Economic Supports**

September 30, 2014
Page: 3

## Eligibility, Benefit, and Payment Information

Total benefit amounts have not changed. Most SSI recipients will receive two payments each month – the federal portion from SSA and the State portion from NYS.

SSP benefits will be issued in the same way that SSI benefits are issued. SSP benefits will be delivered on or before the first of each month.

The file format sent to the banks for SSP direct deposits will differ slightly from the file sent by SSA in that only the last 4 digits of the social security number will be sent for SSP direct deposits while SSA provides the entire 9 digits. Information about this change was provided in GIS 14 TA/DC039 issued on September 26, 2014.

SSP benefits amounts will continue to be based on the five categories of State Living Arrangements. OTDA, rather than SSA, will determine SSP eligibility, the State Living Arrangement category, and benefit amounts. Recipients who receive SSI are eligible for a full SSP benefit based on their living arrangement category. The SSI Benefit Levels Chart, which provides the maximum benefit levels, is available on the OTDA website.

Recipients who receive only SSP benefits will report changes to OTDA rather than SSA. Recipients who receive both SSI and SSP should report changes to SSA. The definition of State Living Arrangement (SLA) A, Living Alone, has been modified slightly to align with SNAP policy.

The Interim Assistance Reimbursement (IAR) process with SSA for federal SSI benefits will remain the same but a separate process has been established for SSP benefits. Detailed information on the SSP process will be provided shortly.

Personal Needs Allowance (PNA) amounts for residents of congregate care facilities remain the same but the PNA is paid from the SSP portion of the benefit.

SSI payees will also be the payee for the SSP benefit. SSP-only recipients may also designate a payee.

## Temporary Assistance (TA) Implications

There is no change in determining the monthly TA grant and allowances for a TA household that contains either a SSI/SSP or SSP only beneficiary. The SSI/SSP or SSP only beneficiary's income or resources must not be counted in determining eligibility or degree of need and their presence must not be counted in the TA household count or case count when:

1. The household is categorically eligible for FA (case type 11) including Safety Net Assistance, Federally Participating (case type 12).

*Exh 13*

---

**OTDA-4357-EL** (Rev. 10/12)                                    UPSTATE AND NYC MESSAGE
GIS  14 TA/DC040

### GENERAL INFORMATION SYSTEM
### Center for Employment & Economic Supports

September 30, 2014
Page: 4

---

2. The household is categorically eligible for Emergency Assistance to Needy Families (case type 19). Once a household is determined to meet all of the eligibility requirements of EAF any SSI/SSP or SSP only beneficiary's income that is retained is considered a resource and must be used to alleviate or end the household's immediate or emergency need.

3. The household is categorically eligible for Safety Net Assistance (case type 16) including Non-Federally participating (case type 17) only when the household would be eligible for a federal category of assistance (because there is a child in the case who meets the definition of a TANF child) except that they have exhausted the State 60 month time limit for the receipt of cash assistance. These households are also known as "MOE eligible" households.

Detailed information will be provided shortly.

### SNAP

Both SSI and SSP-only recipients remain eligible for SNAP under the New York State Nutrition Improvement Project (NYSNIP). OTDA will utilize the modified SDX to identify individuals who are categorically eligible for SNAP and the automatic enrollment process will remain the same.

More information will be forthcoming.

### Medicaid Implications

Recipients of SSI and SSP, and SSP-only recipients, remain automatically eligible for Medicaid.

Individuals determined eligible for SSI and/or a SSP are automatically eligible for Medicaid. A separate Medicaid application is not required.

Please contact the Local District Support Unit for questions related to Medicaid eligibility. Contact number for Upstate is (518) 474-8887 and for NYC is (212) 417-4500.

### More Information

Additional information is available by calling, emailing, or visiting the SSP website.

SSP Customer Support Center:  1-855-488-0541

Web address:  www.otda.ny.gov/programs/ssp

Mailing Address:        NYS OTDA State Supplement Program
                        PO Box 1740
                        Albany. NY  1220

E-mail address: otda.sm.ssp@otda.ny.gov

*Exh 14*

**From:** Genrikh Vapne [mailto:genrikhjv@gmail.com]
**Sent:** Sunday, April 16, 2017 2:22 PM
**To:** otda.sm.cees.ebt <otda.sm.cees.ebt@otda.ny.gov>
**Subject:** Re: OTDA Commissioner Samuel D. Roberts

To Mr. D. Staszak

Dear Mr. Staszak,
On 12/30/2016 I received from you a letter after my addressing to Governor Cuomo about payment of COLA by your office to SSI recipients. By reference on SSL sec.209 you stated that SSP "does not provide for cost of living adjustments."
I read and studied the SSL sec.210 and saw such expressions as "cost of living increases in such benefits", "cost of living adjustment" and mentioned 42USC1382f which declares about COLA.
So, please, advise me your interpretation of mentioned in previous sentence expressions and SSA law related to COLA issue which you with OTDA Commissioner S. Roberts together refuse to pay to NYS SSI recipients intent to address with such created by you and Roberts issue to Federal Court to compel both of you to pay COLA and return all underpaid by you money.
I hope it is clear to you to ignore this letter and left is without response will only give me a new fact of ignorance for addressing to Court.
I am sure 7 days is a sufficient term for response. Absence of response is only help me to be more sure in suing of Roberts in Federal Court in same manner as I sue him now in Kings Supreme Court for many other ugly actions in SNAP.
Regards,
G.Vapne

*Exh 15*

Attention Ms. N. Berryhill, Acting SSA Commissioner

From Genrikh Vapne,
99 Vandalia Ave., Apt.10G,
Brooklyn, NY 11239
Email: genrikhjv@gmail.com

Dear Ms. Berryhill,

I address to you to get written SSA official opinion about COLA as a money SSA pay to SSI recipients.

I am interesting in fair and legal resolving of COLA problem for many years to resist to wrong policy of USDA and HUD departments of US government which consider COLA as an income in usual sense of this term and as a result of such illegal policy reduce food stamp and increase rent when COLA >0. Such illegal policy USDA and HUD lead for many decade years despite for USDA it is exist from 1982 year 7USC2014(d)(12) excluding COLA as usual income in calculation of food stamp allotments with addition of 7CFR273.9(i) and for HUD it is exist 24CFR 5.609 (c) also excluding of such income in calculating of rent.

I ask you on behave of SSA to recognize officially that COLA IS NOT INCOME in usual economical sense of the term. It should be known to everybody official and not official in any US government departments and agencies that COLA is compensation money returned by SSA to SSI beneficiaries because food market inflation of cost-of-living. For me, such compensation of inflation is a return by SSA the government debt to SSI recipients who were forced to spent more money when buying food on market with permanent rise of prices.

I made several addressing by email to SSA experts concerning the issue of COLA and relation SSA to USDA and HUD illegal COLA policy.

In my email to SSA.Comments@ssa.gov in December, 2016, I asked:

1. What do SSA think about USDA FNS policy to use COLA as an income for reducing SNAP budget for SSI recipients while 7USC2014(d)(12) excludes that income in calculation of SNAP?

2. What do SSA think about meaning of September 30 and July 1 in the 7USC2014(d)(12)? By my opinion for period from July 1 till September 30 (third quarter of year) SSA determines the amount of COLA in %% of inflation for this period of year. That I think is only meaning of these data in the mentioned law. By SSA law about COLA it is acted for every months of year.

3. Why SSA knowing of COLA amount in October after calculation in third quarter of year (from July 1 till September 30) publish it to people in November and pay really in January every year as written by my SSA local agency in its letter to SSI recipients I got?

4. What do SSA think about NYS OTDA policy in paying to SSI recipients state part of SSI benefit without COLA?

*Exh 15*

5. Can COLA be evaluated as "money involuntarily returned"? Such definition used in NYSRR347.11 and in 7CFR273.9(i)   for excluding such income in calculation of SNAP benefits but not really excluded in NYS OTDA practice.
In their response SSA experts had written:

 Thank you for contacting the Social Security Administration.We apologize for the delay in answering your inquiry. We regret any inconvenience this may have caused. All monthly Social Security benefits and Supplemental Security Income (SSI) payments will increase 0.3 percent for 2017. The purpose of the COLA is to ensure that the purchasing power of Social Security and Supplemental Security Income (SSI) benefits is not eroded by inflation. It is based on the percentage increase in the Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) from the third quarter of the last year a COLA was determined to the third quarter of the current year. If there is no increase, there can be no COLA.CPIs are determined by the Bureau of Labor Statistics:
http://www.bls.gov  For additional information about the 2017 COLA, go to www.socialsecurity.gov/cola ,http://www.ssa.gov/OACT/COLA/colasummary.html
 Information about Medicare costs can be found at http://www.medicare.gov
 If you  have confidential questions or if your inquiry requires access to your personal information, you must contact our toll-free number, 1-800-772-1213, or your local Social Security office.
You can speak to an 800-number representative from 7 a.m. to 7 p.m. on business days. Telephones generally are less busy during the early morning from 7 a.m. to 9 a.m. and in the late afternoon and evening from 5 p.m. to 7 p.m. We encourage people to call during these times to avoid busy signals and extended wait times. Our phone lines are also busiest early in the week and early in the month. Call volumes are also highest during the first three months of the year. However, if you're planning to file for benefits, you should call us as soon as possible. If you call, we can serve you better if you have the following handy:
--Your Social Security number;
--A list of questions you want to ask;
--Any recent correspondence you have received from us; and
--A pencil and paper to make a note of the information we provide.
You can obtain the address and directions to the nearest Social Security Office on our Web site at the following Internet address:
http://www.socialsecurity.gov/locator
 So, please, confirm me by your letter of my opinion COLA IS NOT INCOME and response on my questions related to illegal USDA and HUD COLA policies. To have your responses in my question N3 about SSA COLA payment policy , N4 about NYS OTDA refuse to pay COLA to NYS SSI recipients  and N5 about involuntarily returned money also needed to me.
Your response would get great judicial meaning for stopping of food stamps and rent robbing by USDA and HUD and returning robbed benefits to people who eligible for  such benefits. Please, also take measures for NYS OTDA pays COLA to NYS residents as SSA pays COLA of all other beneficiaries in USA.
I wait your letter with response on my remarks and  questions above.
Best regards,

*G. Vigrue  03/03/2017*

*Exh 16*

**^OPI Net Post   03/24/2017**

to me

This message is in response to your March 3, 2017 email to Acting Commissioner Berryhill concerning the impact of a cost-of-living adjustment (COLA) on assistance programs. We are answering your questions in the order in which you presented them.

1. The Supplemental Nutrition Assistance Program (SNAP) is administered by the Food and Nutrition Service of the Department of Agriculture. Section 7 USC 2014(d)(12) is part of the law governing the SNAP program. Although 7 USC 2014(d)(12) mentions treatment of a cost-of-living adjustment under Title II or XVI of the Social Security Act, the Social Security Administration (SSA) has no jurisdiction over the administration of the SNAP program and does not interpret the law governing that program and the Department of Agriculture.

If you have questions concerning interpretation of the law governing the SNAP program, we suggest that you contact the Department of Agriculture, 1400 Independence Avenue SW, Washington, DC 20250.

2. Section 7 USC 2014(d)(12) is part of the law governing the SNAP program. The Social Security Administration has no official opinion regarding the meaning of the dates in that section of the law as SSA has no jurisdiction over the administration of the SNAP program and does not interpret the law governing that program.

3. In determining the amount of a COLA, publication of the determined COLA increase and payment of the COLA increase, SSA follows the requirements of the Social Security Act. The law sets out the formulas that SSA follows in calculating the COLA (Section 215(i)(1). The COLA is generally determined in October each year. The law also requires that SSA publish a public notice in the Federal Register byNovember 1 of each year. By law, for Title II purposes, the increase is effective with the December benefit, which is paid in January. For Title XVI, the increase is effective with the January payment.

4. The New York State Office of Temporary and Disability assistance (OTDA) administers the Supplemental Security Income (SSI) State supplement program for New York. The law does not require that the State increase its State supplement payments by the Federal COLA. Many years ago, Congress approved pass-along legislation because some States reduced their supplementary payment levels when Congress enacted cost-of-living adjustments in the Federal Benefit Rate. As a result, some SSI recipients often did not receive the full amount of the COLA increase. By law, State can choose one of two methods to maintain their State supplement payment pass-along levels. New York has chosen to maintain State supplementary payments at the March 1983 (adjusted) levels. States have the option of increasing their payments above the required maintenance level, but are not required to do so by law. SSA monitors the State programs annually to make sure they are in compliance with the requirements of the law to pass along the full benefit of the COLA in the State supplement program.

5. The Social Security Act specifies a formula for determining each COLA. According to the formula, COLAs are based on increases in the Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W). A COLA effective for December of the current year is equal to the percentage increase (if any) in the average CPI-W for the third quarter of the current year over the average for the third quarter of the last year in which a COLA became effective. It is not calculated on a "return" of any moneys paid.

A COLA amount cannot be considered money involuntarily returned. Under 7 CFR273.9(5)(i), money involuntarily returned means "moneys received from any income source which are voluntarily or involuntarily returned, to repay a prior overpayment received from that income source." That means money that a government agency withholds from the benefit payment to recover an overpayment of benefits, not extra money returned to a benefit recipient. Since the Social Security Administration has no jurisdiction over the administration of the SNAP program, we cannot evaluate USDA's interpretation of the law governing that program.

We hope you find this information helpful. If you have additional questions, we suggest that you direct them to the Social Security Administration, Office of Public Inquiries, 1100 WHR, 6401 Security Boulevard, Baltimore, Maryland 21235.

*Social Security Administration*



*Exh 17*

To Honorable Sonny Perdue,                                        April 1, 2017
New Secretary of Department of Agriculture

From Genrikh Vapne.
99 Vandalia Ave, Apt.10G
Brooklyn, NY 11239

Dear Sir,
First I congratulate you with engaging in such highest USDA position and wish you be successful in this business exclusively important for many simple American residents under your authority. Don't forget about 7USC3121.
I am also under USDA authority from 1992 year being eligible with my wife to food stamps and SNAP programs. And my family of two elder and disabled persons with only SSI income is happy to buy food pursuant such programs with small exclusion.
I mean the permanent decreasing by USDA order of SNAP allotment every year when COLA is more then 0. You should know that COLA is a cost of living adjustment annually determined and calculated by SSA. The laws and rules used by SSA for such determination underline that COLA is measure of food market inflation. SSA every year when COLA>0 pays to its SSI beneficiaries small amount of money to compensate their eroded because inflation capability to buy food.
So I insist on final recognition by USDA of **COLA IS NOT INCOME** (as in usual sense of income nature). by substance of COLA nature.
It is very pity that all USDA Secretaries before you from 1982 year as minimum illegally neglected such my affirmation and considered COLA AS INCOME decreasing of SNAP allotment to such SNAP beneficiaries as me every year when COLA was more 0.
To the issue I attracted the attention of such USDA officers, I hope formers, as K. Concannon., A. Rowe, Y. Jackson, J. Shahin, E .Silberman, many others in FNS system responsible persons and finally IG Ph. Fong who by my initiative opened investigation of case PS-2701-0231 without any results.
All these USDA officers, especially A. Rowe, refused to execute the law 7USC2014(d)(12) which states:

7 U.S. Code § 2014 - Eligible households (d)EXCLUSIONS FROM INCOME  Household income for purposes of the supplemental nutrition assistance program shall include all income from whatever source excluding only— **"(12)  through September 30 of any fiscal year, any increase in income attributable to a cost-of-living adjustment made on or after July 1 of such fiscal year under title 11 or XVI of the Social Security Act [42 U.S.C. 401 et seq., 1381 et seq.], section 3(a)(1) of the Railroad Retirement Act of 1974 (45 U.S.C. 231b(a)(1)), or section 5312 of title 38, if the household was certified as eligible to participate in the supplemental nutrition assistance program or received an allotment in the month immediately preceding the first month in which the adjustment was effective;"**

Violation of this law was commanded by A. Rowe to all local SNAP Agencies including of NYS OTDA to reduce SNAP allotment to all eligible beneficiaries. More over A. Rowe was informed by me about huge amount of federal, state and local NYC laws and rules violations related to SNAP made by OTDA and NYC HRA officers who now are Respondents in case N889/2017 in NYC Kings county Supreme Court.

Really the FNS policy of permanent for many years reducing of SNAP allotments by illegal manipulations by TFP, deductions, SUA and its support of same manipulations made by local agencies under FNS management deserves special at last investigation by appropriate Congress offices before which were testimonies made by Concannon and Rowe. **Fraud is main instrument of USDA mentioned by me above officers' activity in realizing of SNAP.**

I hope on your reasonable resolving of the COLA SNAP problem and your immediate order to everybody in USDA and under USDA agencies to stop decreasing of food stamps when COLA is more 0.
I am not interesting and hope you also to address for resolving the issue to Federal Court where you together with HUD, SSA and New York OTDA would be Defendant because of COLA issue.
Consider additional issue of return all food stamps which were illegally withdrawn from SNAP beneficiaries' pocket for many years.
My waiting of your response will be till 05/02/2017. If your response will be absent till this date on 05/03/2017 I will go to Federal Court with Complaint against you. Sorry!
With best wishes,

G. Vapne

*Exh.18*

to me

Dear Mr. Vapne:

Thank you for your letter sent on April 1, 2017, to the Honorable Sonny Perdue.  Your message has been forwarded to the Food and Nutrition Service (FNS) as we are the agency that oversees the Supplemental Nutrition Assistance Program (SNAP).  Please know that while SNAP is a Federal program, it is administered directly by State agencies through local offices.  Here at the National Office we do not have access to individual client files, but we can provide information that may be helpful to you.

We understand that you have concerns related to the Cost of Living Adjustment (COLA) to your Supplemental Security Income (SSI) benefits and the impact it has on your SNAP allotment.  Although we cannot speak to the specifics of your individual case, we would like to share some information about how these adjustments are considered for the purposes of SNAP.

SNAP maximum allotments, deductions, and income eligibility standards are adjusted at the beginning of each Federal fiscal year to reflect changes in the cost of food.  While SSI benefits have similar annual adjustments, the SSI COLA depends on a large number of factors not considered for SNAP COLA changes.  This means that some years the COLA for SSI will result in an increase in SSI benefits, while the COLA for SNAP may not increase the maximum benefit allotment.

Generally, when a household's income increases, such as through a SSI COLA increase, their SNAP benefit amount may decrease as the household has more income available to purchase food.  While we understand your frustrations, FNS has no discretion to change how benefits are determined without a change in Federal law.  For more information about SNAP eligibility criteria and how benefits are calculated, please visit our website at:  http://www.fns.usda.gov/snap/eligibility.

Thank you again for writing to FNS and we hope this information has been helpful to you.

Sincerely,

## Sasha Gersten-Paal

Sasha Gersten-Paal
Chief
Certification Policy Branch
Program Development Division

*Exh 19*

To Honorable Ben Carson,                                    April 2, 2017
New Secretary of Department of Housing and Urban Development

From Genrikh Vapne.
99 Vandalia Ave, Apt.10G
Brooklyn, NY 11239

Dear Sir,
First I congratulate you with engaging in such highest HUD position and wish you be successful in this business exclusively important for many simple American residents under your authority.
I am also under HUD authority from 1996 year living in HUD subsidized building. And I am happy to live in such conditions being elderly and disabled person with my wife in same condition with small exclusion.
I mean the permanent increasing of my rent every year when COLA is more then 0. You should know that COLA is a cost of living adjustment annually determined and calculated by SSA. The laws and rules used by SSA for such determination underline that **COLA is measure of food market inflation**. SSA every year when COLA>0 pays to its SSI beneficiaries small amount of money to compensate their eroded because inflation capability to buy food.
So I insist on final recognition by HUD that **COLA IS NOT INCOME** (as in usual sense of income nature). by substance of COLA nature.
It is very pity that all HUD Secretaries before you from 1982 year as minimum illegally neglected such my affirmation and considered COLA AS INCOME increasing the rent to such residents as me every year when COLA was more 0.
To this letter I apply the list of HUD current laws and determinations which at last support my requirement to stop illegal HUD policy of rent increasing connected with COLA.
As addition to this list I remind you about 42USC1404a, 1437a, 1437f.
I hope on your reasonable resolving of the COLA rent problem and your immediate order to everybody in HUD and under HUD agencies and buildings to stop increasing of rent when COLA is more 0.
I am not interesting and hope you also to address for resolving the issue to Federal Court where you together with USDA, SSA and New York OTDA would be Defendant.
Consider additional issue of return all money which were illegally withdrawn from residents' pocket for many years.
My waiting of your response will be till 05/02/2017. If your response will be absent till this date on 05/03/2017 I will go to Federal Court with Complaint against you. Sorry!
With best wishes,

*G. Vapne*